**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| NATIONAL ARENA LEAGUE, INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. |
| CORPUS CHRISTI RAGE ARENA FOOTBALL, LLC and ERIC DEE SMITH, | |
| Defendants. | |

## COMPLAINT

Plaintiff National Arena League, Inc. brings this action for damages and other relief against Defendants Corpus Christi Rage Arena Football, LLC ("CCRAF") and Eric Dee Smith ("Smith") and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for damages pursuant to a default of a promissory note between the parties.

## PARTIES

2.     Plaintiff is a Delaware nonprofit corporation, which transacts business in Georgia and maintains its registered agent's office at 5565 Glenridge Connector, NE, Suite 850, Atlanta, Georgia 30342.

3.    Defendant CCRAF is a Texas limited liability company, which has two members, Eric Dee Smith and Leonard Harris, who, upon information and belief, are citizens of the state of Texas.

4.    Upon information and belief, attached hereto as **Exhibit A** is a true and correct copy of CCRAF's current operating agreement.

5.    Defendant Smith is a citizen of Texas and resides in Corpus Christi, Texas.

6.    CCRAF's principle office is located at 1935 Flour Bluff Drive, Corpus Christi, Texas 78418.

7.    CCRAF may be served with process by delivering copies of the Summons and this Complaint to CCRAF's registered agent, Eric Dee Smith, to 1935 Flour Bluff Drive, Corpus Christi, Texas 78418.

8.    Smith may be served with process by delivering copies of the Summons and this Complaint to his place of business at 1935 Flour Bluff Drive, Corpus Christi, Texas 78418, his residence at 7252 Mansions Drive, Apartment J3, Corpus Christi, Texas 78414, or wherever he may be found.

## JURISDICTION & VENUE

9.   The Court has diversity jurisdiction over Plaintiff's claims because Plaintiff and Defendants are diverse and the amount in controversy exceeds $75,000, 28 U.S.C.A. § 1332.

10.   Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B), NDGa., venue is proper because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Atlanta Division of the Northern District of Georgia.

11.   The Court has personal jurisdiction over Defendants CCRAF and Smith, pursuant to Georgia's long-arm statute, O.C.G.A. § 9-10-91.

12.   The promissory note upon which Plaintiff's claims are based was entered into in Fulton County, Georgia, and the contract provides that the note is held in Georgia and governed by the laws of the State of Georgia.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S CLAIM FOR DAMAGES FOR BREACH OF CONTRACT

13.   On or about April 13, 2017, Plaintiff and Defendant CCRAF entered into a contract, in Fulton County, Georgia, whereby Plaintiff agreed to extend CCRAF a line of credit not to exceed $150,000, as evidenced by a promissory note dated the same date ("Note"). A true and correct copy of the Note is attached as **Exhibit B**.

14.   Under the Note, CCRAF was to make regular monthly interest only payments, at a rate of 10% per annum, compounded monthly, on all amounts drawn on the line of credit, with a final balloon payment due on December 31, 2017. (Note p. 1.)

15.   The Note provides for a late charge in the amount of 5% of the monthly payments (including, without limitation, the balloon payment due on the maturity date) that are not received by Plaintiff within 10 days after the date due.  (Note p. 2.)

16.   The Note provides for an interest rate of 15% per annum after the maturity date, whether by acceleration due to an event of default or otherwise. (Note p. 3.)

17.   The Note provides for the collection of "all costs" and "reasonable attorney's fees if collection is required by legal action." (Note p. 4.)

18.   Defendant Smith, on or about April 13, 2017, did personally guarantee the full and prompt performance and payment of all obligations of CCRAF under the Note, and agreed to be jointly and severally liable for all amounts owed under the Note. (Note p. 5.)

19.   CCRAF and Smith have failed to pay all amounts due and owing under the Note.

20. Plaintiff sent a Notice of Default, dated November 21, 2017, notifying CCRAF and Smith of their default, acceleration of the maturity date, and of Plaintiff's intent to file this action if all amounts owed under the Note were not paid in full by December 1, 2017. A true and accurate copy of the Notice of Default is attached as **Exhibit C.**

21. Defendants, jointly and severally, currently owe Plaintiff more than $173,633.48, in past due principal, interest and related fees, plus additional interest becoming due as a result of Defendants' default, and attorney's fees in an amount to be proven in this case.

## COUNT 1: BREACH OF CONTRACT

22. Paragraphs 1 through 21 of the Complaint are incorporated by reference as if set forth herein.

23. Defendants CCRAF and Smith entered a valid and binding contract with Plaintiff.

24. Defendants CCRAF and Smith defaulted on the terms of the Note by failing to make payments as they came due.

25. Plaintiff suffered damages as a direct result of CCRAF's and Smith's breach of the repayment terms in the Note.

5

26.   As of November 21, 2017, CCRAF and Smith owed Plaintiff $173,633.48 in principal and accrued interest.

27.   Plaintiff is entitled to a judgment against CCRAF and Smith, jointly and severally, for all amounts owed under the Note, plus additional interest that has and will come due since November 21, 2017, at a rate of 15% per annum, and reasonable attorney's fees pertaining to the collection of the debt.

**COUNT 2: ATTORNEY'S FEES AND EXPENSES OF LITIGATION**

28.   Paragraphs 1 through 27 of the Complaint are incorporated by reference as if set forth herein.

29.   The Note provides that, in the event of default, CCRAF and Smith shall pay all attorney's fees and costs of collection of the amounts owed under the Note.

30.   On November 21, 2017, Plaintiff gave notice under O.C.G.A. § 13-1-11 to Defendants of its intent to seek attorney's fees.

31.   Alternatively, Defendant has been stubbornly litigious, has acted in bad faith, or has put Plaintiff through unnecessary trouble or expense, entitling Plaintiff to attorney's fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

Plaintiff respectfully requests:

6

(a)     That the Court enter judgment in its favor against Defendants, jointly and severally, for no less than $173,633.48, plus additional interest that has or will accrue until the date of judgment;

(b)     That the Court award Plaintiff its attorney's fees and expenses of litigation pursuant to the Note, or alternatively under O.C.G.A. § 13-1-11;

(c)     That the Court award Plaintiff its Court costs; and

(d)     Such other relief as the Court deems just and proper.

Dated: January 4, 2018

|  | s/ Jon David W. Huffman |
|---|---|
| POOLE HUFFMAN LLC | Jon David W. Huffman |
| 315 W. Ponce de Leon Ave | Georgia Bar No. 937966 |
| Suite 344 | Timothy J. Guilmette |
| Decatur, Georgia 30030 | Georgia Bar No. 624309 |
| Phone: (404) 373-4008 | |
| jondavid@poolehuffman.com | |
| tim@poolehuffman.com | Counsel for Plaintiff |

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Carlos H. Cascos
Secretary of State

# Office of the Secretary of State

August 04, 2016

Lawyer's Aid Service Inc
PO Box 848
Austin, TX 78767 USA

RE: CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.
File Number: 802513328

It has been our pleasure to file the certificate of formation and issue the enclosed certificate of filing evidencing the existence of the newly created domestic limited liability company (llc).

Unless exempted, the entity formed is subject to state tax laws, including franchise tax laws. Shortly, the Comptroller of Public Accounts will be contacting the entity at its registered office for information that will assist the Comptroller in setting up the franchise tax account for the entity. Information about franchise tax, and contact information for the Comptroller's office, is available on their web site at http://window.state.tx.us/taxinfo/franchise/index.html.

The entity formed does not file annual reports with the Secretary of State. Documents will be filed with the Secretary of State if the entity needs to amend one of the provisions in its certificate of formation. It is important for the entity to continuously maintain a registered agent and office in Texas. Failure to maintain an agent or office or file a change to the information in Texas may result in the involuntary termination of the entity.

If we can be of further service at any time, please let us know.

Sincerely,

Corporations Section
Business & Public Filings Division
(512) 463-5555

Enclosure

*Come visit us on the internet at http://www.sos.state.tx.us/*

Phone: (512) 463-5555          Fax: (512) 463-5709          Dial: 7-1-1 for Relay Services
Prepared by: Virginia Tobias          TID: 10285          Document: 683181600002

**EXHIBIT A**

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Carlos H. Cascos
Secretary of State

# Office of the Secretary of State

## CERTIFICATE OF FILING
## OF

### CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.
File Number: 802513328

The undersigned, as Secretary of State of Texas, hereby certifies that a Certificate of Formation for the above named Domestic Limited Liability Company (LLC) has been received in this office and has been found to conform to the applicable provisions of law.

ACCORDINGLY, the undersigned, as Secretary of State, and by virtue of the authority vested in the secretary by law, hereby issues this certificate evidencing filing effective on the date shown below.

The issuance of this certificate does not authorize the use of a name in this state in violation of the rights of another under the federal Trademark Act of 1946, the Texas trademark law, the Assumed Business or Professional Name Act, or the common law.

Dated: 08/03/2016

Effective: 08/03/2016



*C L H C —*

Carlos H. Cascos
Secretary of State

*Come visit us on the internet at http://www.sos.state.tx.us/*

Phone: (512) 463-5555       Fax: (512) 463-5709       Dial: 7-1-1 for Relay Services
Prepared by: Virginia Tobias       TID: 10306       Document: 683181600002

FILED
In the Office of the
Secretary of State of Texas

AUG 0 3 2016

Corporations Section

## CERTIFICATE OF FORMATION

### OF

## CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.
### (A Limited Liability Company)

### ARTICLE ONE

The name of the filing entity being formed is CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C. (the "Company").

### ARTICLE TWO

The filing entity being formed is a limited liability company.

### ARTICLE THREE

The purpose for which the Company is formed is any lawful purpose for which a limited liability company may be formed under the Texas Business Organizations Code.

### ARTICLE FOUR

The street address of the Company's initial Registered Office, and the name of its initial Registered Agent at that office, are as follows:

Eric Dee Smith
1935 Flour Bluff Drive
Corpus Christi, Texas 78418

## ARTICLE FIVE

The Company will not have Managers. The names and addresses of the initial Members are:

> Eric Dee Smith
> 1935 Flour Bluff Drive
> Corpus Christi, Texas 78418
>
> Leonard Harris
> 1510 Madrid
> Corpus Christi, Texas 78416

## ARTICLE SIX

The undersigned Organizer hereby disclaims any past or future interests in or control of CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C. and resigns as the Organizer effective upon the formation of the Company.

IN WITNESS WHEREOF, I have hereunto set my hand this third day of August, 2016.

> *Sharon Leal*
> Sharon Leal, Organizer
> 408 W. 17th Street, Suite 101
> Austin, Texas 78701-1207
> (512) 474-2002

## Article One — Adoption, Amendment, and Interpretation of the Agreement

### 1.01 Definitions

"Agreement" means the company agreement of this limited liability company, as it may be amended from time to time.

"Company" means the limited liability company formed as described in Article 2.01 of the Agreement.

"Governing authority" has the meaning set forth in Section 1.002(35)(A), TBOC: the Managers of a limited liability company that is managed by Managers or the Members of a limited liability company that is managed by Members who are entitled to manage the company. The term does not include an officer who is acting in the capacity of an officer.

"Governing documents" has the meaning set forth in Section 1.002(36), TBOC: the certificate of formation, the Agreement and other documents or agreements adopted by the Company to govern the formation or internal affairs of the Company.

"Governing person" has the meaning set forth in Section 1.002(37), TBOC: a person serving as part of the governing authority of an entity.

"Managerial official" has the meaning set forth in Section 1.002(52), TBOC: an officer or a governing person.

"Member" has the meaning set forth in Section 1.002(53)(A), TBOC: a person who is a Member or has been admitted as a Member in the Company under its governing documents.

"Membership interest" has the meaning set forth in Section 1.002(54), TBOC: a Member's interest in an entity.

"Signature" has the meaning set forth in Section 1.002(82), TBOC: any symbol executed or adopted by a person with present intention to authenticate a writing. Unless the context requires otherwise, the term includes a digital signature, an electronic signature, and a facsimile of a signature.

"TBOC" means the Texas Business Organizations Code, as amended from time to time.

"TLLCL" means the Texas Limited Liability Company Law, the short title for the provisions of Title 3, TBOC and the provisions of Title 1, TBOC to the extent applicable to limited liability companies, as amended from time to time.

"Units of Membership Interest" or "Units" means the units into which membership interests in the Company are divided for the purpose of providing a quantitative measurement of each Members' relative membership interest in the Company.

"Writing" or "written" has the meaning set forth in Section 1.002(89), TBOC: an expression of words, letters, characters, numbers, symbols, figures, or other textual information that is inscribed on a tangible medium or that is stored in an electronic or other medium that is retrievable in a perceivable form. Unless the context requires otherwise, the term includes stored or transmitted electronic data, electronic transmissions, and reproductions of writings; and does not include sound or video recordings of speech other than transcriptions that are otherwise writings.

### 1.02  Interpretation and Severability

The Agreement is governed by and shall be construed in accordance with the laws of the State of Texas. If any provision of the Agreement or the application thereof to any person or circumstance is held invalid or unenforceable, the remainder of the Agreement and the application of that provision to other persons or circumstances are not affected thereby, and that provision shall be enforced to the greatest extent permitted by the applicable law.

### 1.03  Gender and Number

Whenever the context requires, the gender of all words used in the Agreement will include the masculine, feminine, and neuter, and the number of all words will include the singular and plural.

### 1.04  Articles and Other Headings

The articles and other headings contained in the Agreement are for reference purposes only and will not affect the meaning or interpretation.

### 1.05  Adoption, Amendment, and Repeal of Company Agreement

The Agreement constitutes the entire agreement of the Members relating to the Company and supersedes all prior contracts or agreements with respect to it, whether oral or written. The Agreement may contain any provisions for the regulation and management of the affairs of the Company not inconsistent with law or the Certificate of Formation. The Members may amend, alter, or repeal the Agreement and adopt a new Company Agreement. All amendments shall be upon advice of counsel as to legal effect, except in emergency. Adoption, amendment, alteration, or repeal of the Agreement, or any part hereof, requires the affirmative vote, approval or consent of the Members. Changes to the Agreement shall take effect upon adoption unless otherwise specified.

### Article Two — Company Certificate of Formation

### 2.01  Certificate of Formation

The Certificate of Formation of CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C. was duly filed with the Texas Secretary of State and became effective on 08 / 03 / 2016 . The Certificate of Formation sets forth the

Company's name, purpose, duration if not perpetual, registered office, registered agent, and type of management, and may set forth other provisions as well. Each provision of the Certificate of Formation shall be observed until amended by a Restated Certificate or Certificate of Amendment duly filed with the Secretary of State.

## 2.02  Registered Office and Agent

The address of the registered office provided in the initial Certificate of Formation as duly filed with the Texas Secretary of State is:

> 1935 Flour Bluff Drive
> Corpus Christi, Texas 78418

The name of the registered agent of the Company at such address, as set forth in its initial Certificate of Formation, is Eric Dee Smith.

The registered agent or office may be changed by filing a "Statement of Change of Registered Office or Registered Agent" with the Texas Secretary of State, and not otherwise. Such filing shall be made promptly with each change. Any such change shall not be effective until filed with the Texas Secretary of State. Proper filing of each change in registered agent or office shall ensure that the Company is not exposed to the possibility of a default judgment. Each successive registered agent shall be of reliable character and well informed of the necessity of immediately furnishing the papers of any lawsuit against the Company to its attorneys.

## 2.03  Principal Place of Business

The address of the Company's principal place of business is hereby established as:

> 1935 Flour Bluff Drive
> Corpus Christi TX  78418

The Company may have additional business offices within the State of Texas, and where it may be duly qualified to do business outside of Texas, as the Members may from time to time designate or the business of the Company may require.

## 2.04  Liability to Third Parties

Except as otherwise expressly agreed in writing, no Member shall be personally liable for the debts, obligations, or liabilities of the Company, including under a court judgment, decree, or order.

The Agreement is for the benefit and convenience of the Company and can be modified by the Company as provided herein. To the extent allowed by law, nothing in the Agreement will create any duty to any third party, and no third parties are entitled to rely on the provisions in the Agreement.

## Article Three — Management

### 3.01  Governing Authority

The governing authority of the Company consists of all the Members of the Company. The business and affairs of the Company shall be managed under the direction of, and all Company powers shall be exercised by or under authority of, the Members, subject to the limitations imposed by the governing documents, as amended from time to time, the TBOC, and all applicable laws and regulations. The Company shall not have Managers as that term is used in the TBOC. A Member shall not have the power to transfer all or substantially all of the Company's assets without the written consent of all of the Members.

### 3.02  Rights of Members to Rely on Work of Others

In discharging a duty or exercising a power, an Officer or a Member, including a Member who is a member of a committee, may, in good faith and with ordinary care, rely on information, opinions, reports, or statements, including financial statements and other financial data, concerning a domestic entity or another person, and prepared or presented by:

1.  An officer or employee of the entity;

2.  Legal counsel;

3.  A certified public accountant;

4.  An investment banker;

5.  A person who the Member reasonably believes possesses professional expertise in the matter; or

6.  A committee of the Members of which the Member is not a member.

A Member may not in good faith rely on the information described above if the Member has knowledge of a matter that makes the reliance unwarranted.

### 3.03  Actions Outside the Ordinary Course of Business

The affirmative vote, approval, or consent of a majority of all of the Members is required to take any action that is not apparently for carrying out the ordinary course of business of the Company. Any act that would make it impossible to carry on the ordinary business of the Company must be authorized by the affirmative vote, approval, or consent of all of the Members.

### 3.04  No Authority to Execute Instruments Absent Specific Authorization

The Agreement provides certain authority for the execution of instruments. The Members, except as otherwise provided in the Agreement, may additionally authorize any Officer(s) or agent(s) to enter into any contract or execute and deliver any instrument in the name of and on behalf of the Company. Such authority may be

general or confined to specific instances. Unless expressly authorized by the Agreement or the Members, no Member, Officer, agent, or employee shall have any power or authority to bind the Company to any contract or engagement, nor to pledge its credit, nor to render it liable pecuniarily for any purpose or in any amount.

### 3.05 Designation of Agents

Except as otherwise provided by the governing documents, each Member and each officer or agent of the Company vested with actual or apparent authority by the Members of the Company is an agent of the Company for purposes of carrying out the Company's business.

An act committed by an agent of the Company that is not apparently for carrying out the ordinary course of business of the Company binds the Company only if the act is authorized in accordance with the Agreement, including, but not limited to, Article 3.03.

### 3.06 Execution of Instruments

An act committed by an agent of the Company for the purpose of apparently carrying out the ordinary course of business of the Company, including the execution of an instrument, document, mortgage, or conveyance in the name of the Company, binds the Company unless:

1. The agent does not have actual authority to act for the Company; and

2. The person with whom the agent is dealing has knowledge of the agent's lack of actual authority.

### 3.07 Compensation

Members shall receive such compensation for their services in managing the Company as shall be determined from time to time by resolution of the Members. Any Member may serve the Company in another capacity as an Officer, agent, employee, or otherwise, and receive additional compensation for that service.

### 3.08 Contracts or Transactions Involving Interested Members or Officers

Any otherwise valid contract or other transaction between the Company and one or more of its Members or Officers (or any entity or other organization in which any of its Members or Officers is a managerial official or has a direct or indirect financial interest) shall be valid for all purposes notwithstanding the presence or participation of that interested party at the meeting during which the contract or transaction was authorized, if any of the following conditions are met:

1. The contract or transaction is fair to the Company at the time it is authorized, approved, or ratified; or

2. The material facts as to the relationship or interest of each interested party and as to the contract or transaction are known by or disclosed to the other

Members, and they nevertheless authorize or ratify the contract or transaction in good faith by an affirmative vote of a majority of the disinterested Members present.

Each interested Member may be counted in determining whether a quorum is present, but shall not vote and shall not be counted in calculating the majority necessary to carry the vote. Article 3.08 shall not be construed to invalidate contracts or transactions that would be valid in its absence. The Company shall have a cause of action for damages against the interested Member if the transaction is not fair to the Company. Any interest in the Company or the subject of the transaction held by the interested Member will be available as security for any such damages.

### 3.09 Indemnification

The Members shall have the power to indemnify any of the Company's Managers or Members, former Managers or Members, or any person who may have served at its request as a Director, Manager, or Officer of another business organization in which it owns shares of capital or stock, or of which it is a creditor, against any costs or expenses actually and necessarily incurred by that person in connection with the defense of any action, suit, or proceeding to which the person is made a party by reason of having been a Manager, Member, or Officer of the Company, or of such other business organizations, provided, however, that no Manager, Member, or Officer shall receive such indemnification if finally adjudicated therein to be liable for negligence or misconduct in the performance of duty. This indemnification shall extend to good-faith expenditures incurred in anticipation of threatened or proposed litigation. By unanimous vote, the Members acting as the governing authority may, in proper cases, extend the indemnification to cover the good-faith settlement of any such action, suit, or proceeding, whether formally instituted or not. Any indemnification or advance of expenses to a Manager, Member, or Officer shall be reported in writing to all the Members with or before the notice or waiver of notice of the next Membership Meeting, or with or before the next submission to Members of a consent to action without a meeting, and, in any case, within the 12-month period immediately following the date of the indemnification or advance. Such indemnification shall not be deemed exclusive of any other right to which those indemnified may be entitled, under any Regulation, agreement, vote of Members, resolution, or otherwise.

### 3.10 Insuring Members, Officers, and Employees

The Company may purchase and maintain insurance on behalf of any Member, Officer, employee, or agent of the Company, or on behalf of any person serving at the request of the Company as an Officer, employee, or agent of another organization or enterprise, against any liability asserted against that person and incurred by that person in any such enterprise, whether or not the Company has the power to indemnify that person against liability for any of those acts.

### 3.11 Committees

The Members may designate one or more committees to conduct the business and affairs of the Company to the extent authorized. Each committee shall consist of one or more Members. The Members shall have the power to change the powers and membership of, fill vacancies in, and dissolve any committee at any time. Committee members shall receive such compensation as the Members may from time to time provide. The designation of any committee and the delegation of authority thereto shall not operate to relieve the Members of any responsibility imposed by law. No committee shall be authorized to approve a plan of merger or share exchange; recommend a voluntary winding up of the Company or a revocation thereof; fill Manager vacancies; fix the compensation of any committee member; or alter or repeal any resolution of the Member that, by its terms, provides that it shall not be so amendable or repealable.

### 3.12  Fundamental Business Transactions

A fundamental business transaction (a merger, interest exchange, conversion, or sale of all or substantially all of the Company's assets), or any other action that would make it impossible to carry out the ordinary business of the Company, must be approved by the affirmative vote of the majority of ALL of the Members.

### Article Four — Membership and Membership Interests

### 4.01 Initial Members

The initial Members of the Company are the persons listed in the initial Certificate of Formation for the Company, each of whom is admitted to the Company as a Member, effective contemporaneously with the date the Company is formed or the date stated in the records of the Company as the date the person becomes a Member, whichever is later, or, if no date is stated in those records, on the date that the person's admission is first reflected in the records of the Company (see the Membership Register in the Appendix to the Agreement).

### 4.02 Members and Membership Interest

A Member has the right to participate in the management and affairs of the Company. If one or more persons own a membership interest in the Company, any other person may be admitted as a Member without acquiring a membership interest. A Member who assigns his membership interest, or any part thereof, to another, does not cease to be a Member for that reason alone.

A membership interest includes a Member's share of profits and losses or similar items and the right to receive distributions, but does not include a Member's right to participate in management. A membership interest does not convey an interest in any specific property of the Company. It is personal property.

Each Member or assignee's membership interest in the Company shall be represented by the Units of Membership Interest duly issued or transferred to that Member or assignee pursuant to the governing documents of the Company, and properly reflected in the Membership Register, or, in the case of an assignee, the membership interests transfer ledger of the Company. Each Member's or assignee's relative membership interest in the Company may be readily determined by dividing the total number of Units held by that Member or assignee by the total number of outstanding Units issued by the Company.

### 4.03  Issuance of Membership Interests After Formation

After the initial formation of the Company, the Company may issue new Units to any person with the affirmative vote of ALL the Members of the Company, and in accordance with the procedures set forth in Article 4.21, Sale or Transfer of Membership Interests.

### 4.04  Admission of New Members

Admission to membership in the Company is conditioned upon meeting the requirements set out in the Agreement and its Appendix. After the formation of the Company, a person only becomes a new Member upon meeting all conditions of membership, which are: a) execution of a signed written agreement to be subject to the Agreement; b) a recorded vote of approval by ALL of the Members; c) payment of the full amount of any initial capital contribution as determined according to the Agreement, or, if the Units are to be received in exchange for agreements to contribute cash, property, or services in the future, execution of a signed written agreement specifying the future contribution to be made and when it is due; and d) the receipt from the Company of a certificate evidencing said person's membership interest in the Company. A person may be admitted as a Member of the Company and acquire a membership interest in the Company without making a contribution to the Company.

### 4.05  Assignees of a Membership Interest

A membership interest may be wholly or partly assigned. An assignee is a holder of a membership interest in the Company who is entitled to the economic rewards of the Company, but does not have the right to participate in the management and affairs of the Company. An assignment entitles the assignee to receive any allocation of income, gain, loss, deduction, credit, or similar items, and to receive distributions to which the assignor was entitled, to the extent those items are assigned, and for any proper purpose, to require reasonable information or account of transactions of the Company and to make reasonable inspection of the books and records of the Company. Until and unless the assignee becomes a Member, the assigning Member retains all other rights, duties, and powers of membership, in particular, the right to participate in the management and governance of the Company.

### 4.06 Admission of Assignees as New Members

An assignee of a membership interest may become a Member only upon meeting all of the conditions listed for admission of new Members in the Agreement, including, but not limited to Article 4.04, Admission of New Members.

### 4.07 Continuing Liabilities and Duties of Assigning Member

No assignment of any membership interest shall relieve the assignor from any duties to the Company. Whether or not an assignee of a membership interest becomes a Member, the assignor is not released from his or her duties or liabilities to the Company, including the duty to make any future contributions agreed to by the assignor, until and unless a written statement releasing him or her from liability is executed by all the Members of the Company in accordance with the Agreement.

### 4.08 Rights and Liabilities of Assignees Admitted as Members

An assignee of a membership interest who becomes a Member has, to the extent assigned, the rights and powers, and is subject to the restrictions and liabilities, of a Member under the governing documents and the TLLCL. An assignee who becomes a Member is liable for the obligations of the assignor to make contributions to the Company, but is not obligated for liabilities unknown to the assignee on the date the assignee became a Member, and which could not be ascertained from the Agreement and its Appendix, as amended from time to time.

### 4.09 Reasonable Doubts as to Right to Assign

When an assignment of a membership interest is requested and there is reasonable doubt as to the right of the person seeking the assignment, before re-cording the assignment of the Units on the Company's books, the Members may require from the person seeking the assignment reasonable proof of that person's right to the assignment. If there remains a reasonable doubt of the right to the assignment, the Members may refuse an assignment unless the person gives adequate security or a bond of indemnity executed by a corporate surety or by two individual sureties satisfactory to the Members as to form, amount, and surety responsibility. The bond shall be conditioned to protect the Company, its Members, Officers, and agents, or any of them, against any loss, damage, expense, or other liability for the assignment of the membership interest.

### 4.10 Community Property Provisions

#### 4.10(a)   Non-Member Spouse Bound by the Agreement

Each spouse of a Member who is not a Member in his or her own right, may have an interest in the Company standing in the name of his or her spouse who is a Member, by reason of the applicable state community property laws. Without determining either the existence or extent of any community property or other interest, each such non-member spouse of a Member agrees to be bound by the terms of the Agreement, as required in accordance with subarticle (f).

### 4.10(b)   Interest of Non-Member Spouse

It is the specific intent of the Members and the Company that each Member's membership interest is held in the sole name of the Member, is deemed to be that Member's sole property, and is under the sole management and control of that Member. Management and control over the membership interest includes the right to vote or to sell such membership interest. This provision is not intended to, and shall not, affect the existence or extent of any community property or other interest that a non-member spouse may have in such membership interest.

### 4.10(c)   Death or Incapacity of a Member

The membership interest of a deceased Member shall vest in his or her legal representative or surviving spouse, subject to the terms of the Agreement. That person shall neither become a Member of the Company, nor have the right to vote, nor otherwise manage the Company unless that person is admitted as a Member in accordance with the Agreement.

### 4.10(d)   Joint Tenants with Right of Survivorship

If the non-member spouse of a Member shall predecease the Member, and the non-member spouse has a community property or other interest in the Company, the Member shall continue to own all of the Units standing in his or her name. The non-member spouse shall duly implement this provision of the Agreement by providing in his or her will for the devise of his or her interest in the Company to the Member. If the community property or other interest of the non-member spouse in said Units does not pass entirely to the Member by intestate succession or through the non-member spouse's will, then the Member and non-member spouse shall be deemed to own such interest not as community property or tenants-in-common, but rather, pursuant to this provision, the Member and non-member spouse agree to hold his or her Units as joint tenants with the right of survivorship.

### 4.10(e)   Divorce of a Member

In the event of the divorce of a Member whose non-member spouse owns a community property or other interest in the Company, all of the Member's Units shall pass to the Member upon divorce. The Member and non-member spouse shall duly effectuate this provision in their property settlement agreement or other like instrument. This provision shall not affect any rights the non-member spouse may have (as between the spouse and the said Member) as to any benefits receivable as a result of such community property interest in the Company.

### 4.10(f)   Member's Duty to Obtain Spouse's Written Consent

Any Member who is now married to a non-member spouse, or who marries after he or she has signed the Agreement, shall cause his or her non-member spouse to sign a document indicating said non-member spouse's

agreement to be bound by the terms of the Agreement within a reasonable time. The failure of the Member to obtain said non-member spouse's consent to the Agreement shall constitute a material breach of the Agreement by said Member.

## 4.11 All Other Forms of Joint Ownership of Membership Interests

The Company may authorize the issue or transfer of Units to joint owners only after consulting such legal and tax counsel as they deem necessary and enacting such provisions as they deem necessary to control membership rights and ownership rights.

## 4.12 Withdrawal of Members

A Member may withdraw from the Company upon thirty (30) days' written notice to the Members of the Company. If the Member has a contribution due within ninety (90) days of the date of withdrawal, withdrawal shall be effective only if approved by a majority of the Members. Otherwise, withdrawal is effective at the time specified in the notice, or if no time is specified, upon receipt by the Company. Acceptance is not necessary to make it effective unless expressly provided in the notice of resignation. Withdrawal does not relieve the Member of any liability to the Company for future contributions agreed to in writing by the withdrawing Member.

## 4.13 Expulsion of Members

Any Member may be expelled from membership in the Company by the affirmative vote of ALL of the other Members of each class or group to which the Member belongs at any annual or special meeting of the Members.

## 4.14 Continuity of the Company

The Company shall not wind up and terminate upon the death, expulsion, bankruptcy, winding up, dissolution, termination or withdrawal of any Member, but shall continue unless a majority of the remaining Members affirmatively votes to wind up the Company. If the termination or withdrawal was of the last remaining Member, then the Company shall wind up unless, no later than the 90th day after the date of the termination of the membership of the last remaining Member, the legal representative or successor of the last remaining Member agrees to: a) continue the Company, and b) become a Member of the Company effective as of the date of the termination or designate another person who agrees to become a Member of the company effective as of the date of the termination.

## 4.15 Classes or Groups of Membership Interests

The Company may establish one or more classes or groups of membership interests in its Certificate of Formation, or by adoption of an amendment to the Agreement. Any of these classes may have full, limited, or no voting rights, and may have such other preferences, rights, privileges, and restrictions as are stated or authorized in the governing documents, as amended. All membership interests of any one class or group shall have the identical voting, conversion, redemption, and other

rights, preferences, privileges, and restrictions. There shall always be a class or group of membership interests outstanding that has complete voting rights except as limited or restricted by voting rights conferred on some other class of outstanding membership interests.

### 4.16  Certificates as Evidence of Membership Interest

Each Member's membership interest shall be evidenced by one or more certificates of membership interest issued by the Company. Each certificate shall be consecutively numbered. The front of the certificate shall state that the Company is organized under the laws of the State of Texas; the name of the Company; the number of Units represented by the certificate and their class or group, if any; the name of the person to whom the certificate is issued; and the date the certificate was issued.

The front of each certificate shall state, in conspicuous print, the following:

**See reverse for transfer and membership restrictions, and for potential duties and liabilities of members.**

The back of the certificate shall contain the following notice:

NOTICE: These Units of Membership Interest ("Units") have not been registered under the Securities Act of 1933 or under any securities law, and cannot be offered, sold, resold, or transferred unless and until registered under all applicable securities laws, or an exemption from registration is available, or the Company has in effect a determination, pursuant to its Company Agreement, that the Units of Membership Interest are not securities. Units of Membership Interest are transferable on the books of the Company only. Ownership of Units does not automatically confer membership, or allow the owner to participate in the voting or management of the Company. The Certificate of Formation, the Company Agreement, members' agreements, or relevant law may additionally restrict transferability and sale of Units, restrict or condition membership, and impose additional membership obligations and liabilities including, but not limited to, Company management and future contributions.

### 4.17  Additional Notices Required on Certificates

Additional reasonable restrictions may be imposed on the transferability or sale of membership interests if the Company conspicuously sets forth a full or summary statement of the restrictions on the back of the certificate. The statement shall be in a new paragraph and begin with the boldfaced words "**NOTICE: Additional Restrictions on Transferability and Sale**:" and shall either a) clearly set forth the restrictions, or b) summarize the restrictions and conspicuously state on the back of the certificate that a restriction exists pursuant to a specified document and that the

Company, on written request to its principal place of business, will provide a free copy of the document to the record holder of the certificate.

If the Company has more than one class or group of membership interests, then the back of the certificate must also contain a) the designations, preferences, limitations, and relative rights of the membership interests of each class or group to the extent they have been determined, and the authority of the governing authority to make those determinations as to subsequent series; or b) a statement that the required information is stated in the Company's governing documents and that, on written request to the Company's principal place of business or registered office, the Company will provide a free copy of that information to the record holder of the certificate.

### 4.18  Signing Certificates – Facsimile Signatures

All membership interest certificates shall be signed by the Member. A signature may be a facsimile if the certificate is countersigned by a transfer agent or registered by a registrar, either of which is not the Company itself or an employee of the Company. If the person who has signed the certificate, or whose facsimile signature has been placed on the certificate, ceases to hold such position before the issuance of the certificate, the certificate may nevertheless be issued by the Company with the same effect as if he or she continued to hold such position on the date of its issuance.

### 4.19  Issuance and Replacement of Certificates

Upon satisfaction of all prerequisites for admission of a new Member and issuance or transfer of Units, a new certificate shall be issued. If the Member received his Units by assignment, the original certificate of the assignor shall be cancelled and a new certificate issued to the assignee and such shall be noted on the records of the Company. If the seller transferred only part of the Units represented by a certificate, a new certificate shall be issued to the seller for the Units retained. No new certificate shall be issued until the former certificate for a like number of Units shall have been surrendered and cancelled, except that in the case of a lost, destroyed, or mutilated original certificate, a new one may be issued, but only upon such terms to the Company (such as bonding or indemnity) as the Members may prescribe.

### 4.20  Mandatory Prerequisites Before Sale or Transfer of Membership Interests

The Company, and all its Members, Officers, employees, and agents, shall sell no Units, nor shall they allow or participate in any purported transfer of any Units, except under the following circumstances:

1. There is on file in the Company records a written attorney's opinion, satisfactory to the Company, which states that currently effective registration statements exist under the Securities Act of 1933 and all applicable state acts; or

2. There is on file in the Company records a written attorney's opinion, satisfactory to the Company, which states that neither federal nor state securities registration is required because the attorney has determined that the Units are not currently securities and will not become securities upon completion of the type of issuance or transfer proposed; or

3. The transaction differs in no detail from a proposed transaction described in an attached written attorney's opinion, satisfactory to the Company, which states that the attorney has reviewed the facts of this proposed transaction, and under the facts as disclosed to him, there is no fraud under Rule 10b-5, and neither federal nor state securities registration is required because, even if the Units are securities, or become securities upon completion of this proposed transaction, the Units or transaction fall within an exemption from registration; or

4. There is on file in the Company records a unanimous resolution of the Members who, having inquired into the issue and sought such legal counsel as they deem sufficient, authorize the proposed issuance or transfer and determine that neither federal nor state securities registration is required to complete this transaction because the transaction will fall under a securities exemption or the Units will not be considered securities upon completion of the transaction.

**4.21 Sale or Transfer of Membership Interests**

The Secretary shall ensure that the requirements of Section 4.20 have been met before the sale or transfer of any Units. Sale and transfer of Units shall be valid only on the membership interest transfer books of the Company subject to the requirements of Section 4.20. Transfer shall be only at the written request of the holder of record of such Units, or by his or her legal representative who shall furnish proper evidence of authority to transfer, or by his or her attorney so authorized by power of attorney duly executed and filed with the Company, and upon surrender for cancellation of any certificates for such Units.

The person in whose name Units stand on the books of the Company, shall be deemed to be the owner thereof as regards the Company. Whenever any assignment of Units may be made for collateral security, written notice thereof shall be given to the Secretary of the Company, or the appropriate Member, and the fact that such Units are held for collateral security, and not absolutely, shall be stated on all certificates and records related to the assignment.

**4.22 Restrictions on Sale and Transfer of Membership Interests**

No Units of the Company and no certificates representing such Units shall be sold or transferred, nor shall any purported sale or transfer of Units be valid if such sale or transfer:

1. Is without a current resolution of the Members approving the transfer; or

2. Is in violation of any law, including state and federal securities law; or

3. Is in violation of any restriction on such transfer set forth in Regulation 4.20, any other provision of the Agreement, or the Certificate of Formation as amended; or

4. Is in violation of any restriction contained in any buy-sell agreement, right of first refusal, or other such agreement entered into by the holders of such Units and duly filed in the records of the Company; or

5. Fails to follow the detailed issue and transfer procedures set out in the Company Record Book Section Five: Membership, or other procedures provided by the Company's legal counsel.

### 4.23 Annual Limit on Transfers

If the Company is taxed as a partnership, and if a proposed transaction would result in over forty-nine percent (49%) of the Company's total Units being sold or exchanged in a fiscal year, the transaction is prohibited unless ALL Members approve it and specifically acknowledge, in writing, their understanding that the transaction may lead to the deemed termination of the "partnership" for federal income tax purposes under I.R.C. § 708. This restriction does not apply to the admission of a new Member by contribution to the Company rather than by purchase of existing Members' Units.

### Article Five — Contributions, Allocations, and Distributions

### 5.01 Member Contributions

Units may be issued for such contribution, including no contribution, as may be fixed from time to time by unanimous vote of ALL the Members. The consideration paid for the Units may consist of any tangible or intangible benefit to the Company; or other property of any kind or nature, including cash, services rendered, a contract for services to be performed, a promissory note or other obligation of a person to pay cash or transfer property to the Company; or securities or other interests in or obligations of an entity. No Units shall be issued until the receipt of the full amount of any contribution due from the prospective Member before issuance; or, if the Units are to be issued in exchange for an agreement to contribute cash, property, or services in the future, receipt of both a signed written agreement specifying the future contribution to be made and when it is due, and a signed written agreement to be bound by the Agreement.

### 5.02 Enforceable Promise for Future Contribution

A Member is obligated to perform an enforceable promise to make a contribution or to otherwise pay cash or transfer property to the Company, as shown

in the records kept under Article 7.01, without regard to the death, disability, or other change in circumstances of the Member. An enforceable promise is one that is in writing and signed by the person making the promise.

## 5.03  Failure to Perform Enforceable Promise

A Member, or the Member's legal representative or successor, who does not perform an enforceable promise to make a payment of cash or transfer property to the Company, whether as a contribution or in connection with a contribution already made, is obligated, at the written request of the Company, to pay in cash the agreed value of the contribution, as stated in the Agreement or the Company's records required under Article 7.01, less any amount already paid for the contribution and the value of any property already transferred. In addition to any other remedy available in law or in equity to the Company or the other Members, if the Member fails to deliver the additional contribution, cash, or property to the Company within thirty (30) days of delivery of the written request, on additional thirty (30) days' written notice to the defaulting Member, the membership interest of the defaulting Member may be:

1. Reduced, including, but not limited to, the limitation or reduction of the Member's voting and/or distribution rights;

2. Subordinated to other membership interests of non-defaulting Members;

3. Redeemed or sold at a value determined by appraisal or other formula to be set by a majority of the Members; or

4.  Made the subject of:

   a)  A forced sale;

   b)  Forfeiture. Upon such forfeiture, the Member shall be entitled to a distribution as under Section 5.07(b) of the Agreement, but shall receive only one-half (1/2) of the fair market value of his or her membership interest;

   c)  A loan from other Members of the company in an amount necessary to satisfy the enforceable promise; or

   d)  Another penalty or consequence determined by a majority of the Members.

Whenever the Company is to pay any sum to a defaulting Member, any amount that Member owes the Company may be deducted from that sum before payment to the Member.

## 5.04  Consent Required to Release Enforceable Obligation

The obligation of a Member, or of the Member's legal representative or successor, to make a contribution or otherwise pay cash or transfer property to the Company, or to return cash or property to the Company paid or distributed to the

Member in violation of the TBOC or the Agreement, may be released or settled only by consent of each Member of the Company.

### 5.05  Non-return of Contributions

No Member is entitled to the return of the whole or any part of his or her capital contribution, or to be paid interest in respect of either his or her capital account or capital contribution. No un-repaid capital contribution is a liability of the Company or any Member. No Member shall be required to contribute or lend any cash or property to the Company to enable it to return any Member's capital contribution.

### 5.06  Voluntary Advances by Members

If the Company does not have sufficient cash to pay its obligations, any Member who agrees to do so may, with the consent of a majority of the Members, advance all or part of the needed funds to, or on behalf of, the Company. Such an advance is not a contribution. It constitutes a loan from the lending Member to the Company, and bears interest from the date of the advance until the date of payment at the rate agreed to by the lending Member and a majority of the Members.

### 5.07  Distributions

Distributions may consist, in whole or in part, of cash, promissory notes, or other property, as the Members may determine is in the best interest of the Company. No Member, regardless of the nature of the Member's contribution, may demand and receive a distribution from the Company in any form other than cash, unless authorized by a majority of the Members of the Company.

#### 5.07(a)  Allocation of Distributions

Each Member shall be entitled to a share of any distributions in proportion to each Member's Units in the Company, or in accordance with the special allocations for that Member, as set out in the Membership Register and amended from time to time.

#### 5.07(b)  Interim Distributions

Before the winding up of the company, a Member is not entitled to receive, and may not demand, a distribution from the Company until a distribution is declared to each Member of the Company, or to a class or group of Members that includes the Member. A majority vote of the Members is required to declare an interim distribution. If the declaration does not contain a different record date, only the Members listed in the Company records on the date of the declaration shall be entitled to any such distribution.

#### 5.07(c)  Distributions on Withdrawal

Any Member who validly exercises the right to withdraw from the Company as granted under the Agreement, is entitled to receive, within thirty (30) days after the date of withdrawal, the fair value of that Member's interest in

the Company, determined as of the date of withdrawal, unless such distribution would work an undue hardship on the Company, in which case the distribution will be paid in installments to be agreed upon by the parties.

### 5.07(d)   Distributions on Expulsion

On expulsion, any expelled Member is entitled to receive, within a reasonable time, the fair value of that Member's interest in the Company as of the date of expulsion.

### 5.07(e)   Prohibited Distributions

Notwithstanding the provisions herein, the Company shall not make a distribution that would cause the Company's total liabilities to exceed the fair market value of its total assets as those terms are defined in Section 101.206, TBOC. A Member who receives a distribution from the Company in violation of this subarticle is required to promptly return the distribution to the Company if the Member had knowledge of the violation.

## 5.08  Allocations of Profit, Loss, and Other Similar Items

The allocation of profits, losses, income, gain, expenditures, deductions, property upon the winding up and termination of the Company, and similar items shall be in proportion to each Member's number of Units in the Company, unless otherwise specified in the special allocations section of the Membership Register.

## Article Six — Officers

## 6.01  Title and Appointment

The Members may elect or appoint one or more persons, who may or may not be Members, as Officers of the Company. In addition, the Members may assign titles (including, without limitation, "President," "Vice President," "Secretary," and "Treasurer") to any such Officers. Unless the Members decide otherwise, and subject to law, the Certificate of Formation, and the Agreement, if the title is one commonly used for an Officer of a for-profit corporation formed under the Texas Business Organizations Code, the assignment of such title shall constitute the delegation to such person of the authority and duties that are normally associated with that office. Any such titled persons shall be deemed Officers of the Company. Any number of titles may be held by the same person, and any delegation pursuant to this section may be revoked at any time by the Members. For purposes of convenience and maintenance of organizational formalities, the Members shall appoint a responsible person to serve as Secretary of the Company.

## 6.02  President

The President, if any, shall be the principal executive officer of the Company, subject to the control of the Members. The President shall have general supervision, direction, and control of the business and Officers of the Company; shall have the

general powers and duties of management usually vested in the office of President of a corporation, except for those powers reserved to the Members by law, the governing documents, or a resolution of the Members; shall have such other powers and duties as may be prescribed by the Members or the Agreement; and shall be *ex officio* a member of all standing committees.

### 6.03 Vice President

The Vice President(s), if any, shall have such powers and perform such duties as from time to time may be prescribed by the Agreement, the Members, or the President. In the absence or disability of the President, the senior or duly appointed Vice President shall perform all the duties of the President until such time as the President is able to resume his duties, or a new President is appointed. When so acting, the senior Vice President shall have all the powers of, and be subject to all the restrictions on, the President.

### 6.04 Secretary

The Secretary shall:

1. See that all notices are duly given as required by the Agreement and as required by law. In case of the absence or disability of the Secretary, or the Secretary's refusal or neglect to act, notice may be given and served by an Assistant Secretary or by the President, any Vice President, or the Members.

2. Be custodian of the minutes of the Company's meetings, its Company Record Book, its other records, and any seal which it may adopt, as required by the Agreement. When the Company exercises its right to use a seal, the Secretary shall see that the seal is embossed on all documents authorized to be executed under seal in accordance with the Agreement.

3. Maintain in the Company Record Book a record of all Units of the Company that have been issued, cancelled, assigned, or transferred, as well as a record of all Members of the Company.

4. Maintain a worksheet during each fiscal year to account for the percentage of Units that have been transferred during that year, if the Company is taxed as a partnership. If a proposed sale, transfer, or assignment would result in over forty-nine percent (49%) of such interests being transferred in a fiscal year, the Secretary shall notify the Members before any vote to approve such sale, transfer, or assignment.

5. Send a notice incorporating a current copy of the Company's Certificate of Formation and the Agreement to every assignee of any membership interest within fifteen (15) days of receiving notice of the assignment.

6. Act as the transfer agent for issuance and transfer of Units in accordance with the Agreement.

7. Perform all duties incident to the office of Secretary, and such other duties as from time to time may be required by Article Four of the Agreement, the Agreement generally, the Members, the President or by law.

## 6.05 Treasurer

The Treasurer, if any, shall:

1. Have charge and custody of, and be responsible for, all funds and securities of the Company, and deposit all funds in the name of the Company in those banks or other depositories as shall be selected by the Members.

2. Receive, and give receipt for, monies due and payable to the Company.

3. Disburse, or cause to be disbursed, the funds of the Company as may be directed by the Members, taking proper vouchers for those disbursements.

4. Give to the Company a bond to assure the faithful performance of the duties of the Treasurer's office and the restoration to the Company of all Company books, papers, vouchers, money, and other property of whatever kind in the Treasurer's possession or control, in case of the Treasurer's death, resignation, retirement, or removal from office, if such bond is required by the Members or the President. Any such bond shall be with one or more sureties or a surety company, and in a sum satisfactory to the Members.

5. Act as the "Tax Matters Partner" as defined in Internal Revenue Code ("I.R.C.") § 6231(a)(7) if the Company is taxed as a partnership and the Treasurer is a Member. If the Treasurer is not a Member, or there is no Treasurer, the Members shall select a Member to serve as the "Tax Matters Partner."

6. Perform all the duties incident to the office of Treasurer and such other duties as may be required by law, by the Agreement generally, by the Members, or by the President.

## 6.06  Powers of the Officers

Any and all Officers shall perform their duties subject to the direction and under the supervision of the Members. No Officer is authorized to transfer all or substantially all of the Company's assets without the written consent of ALL of the Members.

## 6.07  Removal and Resignation

Any Officer may be removed, with or without cause, by vote of a majority of the Members, at any regular or special meeting of the Members, or by any committee or Officer upon whom that power of removal may be conferred by the Members. Such removal shall be without prejudice to the contract rights, if any, of the person removed. Any Officer may resign at any time by giving written notice to the Members of the Company, or to the President or Secretary if such offices have been filled. Any

resignation shall take effect upon receipt, or at any later time specified therein. Unless otherwise stated, the acceptance of that resignation shall not be necessary to make it effective.

### 6.08 Term of Office

Each Officer, if any, shall serve until a successor is chosen and qualified in his or her stead, or until his or her earlier death, resignation, or removal from office.

### 6.09 Vacancies

Upon the occasion of any vacancy occurring in any Company office, by reason of resignation, removal, or otherwise, the Members may elect an acting successor to hold office for the unexpired term or until a permanent successor is elected.

### 6.10 Compensation

The compensation of the Officers shall be fixed from time to time by the Members, and no Officer shall be prevented from receiving a salary by reason of the fact that the Officer is also a Member of the Company.

### Article Seven — Company Records and Fiscal Matters

### 7.01 Records Required by Texas Business Organizations Code § 101.501

The Company shall keep at its principal office in the United States, or make available to a person, meaning a governing person, Member, or assignee of a membership interest, at its principal office in the United States not later than the fifth (5th) day after the date the person submits a written request to examine the books and records of the company under Sections 3.152(a) and 101.502 of the Texas Business Organizations Code, a current list that states the following:

1. The percentage or other interest in the Company owned by each Member;

2. If one or more classes or groups of membership interests are established in or under the Certificate of Formation or Company Agreement, the names of the Members of each specified class or group;

3. A copy of the Company's federal, state, and local tax information or income tax returns for each of the six preceding tax years;

4. A copy of the Company's Certificate of Formation, including any amendments to or restatements of the Certificate of Formation;

5. A copy of the Company Agreement, including any amendments to or restatements of the Company Agreement;

6. An executed copy of any powers of attorney;

7. A copy of any document that establishes a class or group of Members of the Company as provided by the Company Agreement; and

8. Except as stated within the Company Agreement, a written statement of:

   a) The amount of a cash contribution and a description and statement of the agreed value of any other contribution made or agreed to be made by each Member;

   b) The dates any additional contributions are to be made by a Member;

   c) Any event the occurrence of which requires a Member to make additional contributions;

   d) Any event the occurrence of which requires the winding up of the Company; and

   e) The date each Member became a Member of the Company.

The Company shall keep at its registered office located in this state and make available to a Member of the Company on reasonable request, the street address of the Company's principal office in the United States in which the records required by this article are maintained or made available.

## 7.02 Minutes of Company Meetings

The Company shall keep at its principal office, or such other place as the Members may order, a Company Record Book containing the minutes of the proceedings of the Members, Members acting as the governing authority, and any committees of the Company. The minutes shall show the time and location of each meeting; whether such meeting was annual, regular, or special; a copy of the notice given or the written waiver thereof; and, if special, how the meeting was authorized. The minutes shall further show the names and number of votes of the Members present or represented at meetings of the Members, and the names of all those present at, and the proceedings of, all meetings.

## 7.03 Membership Register

To meet the requirements of Sections 3.151(a)(3), 101.501(a)(1), 101.501(a)(7)(A)–(C) and 101.501(a)(7)(E), TBOC, the Company shall keep at its principal office a membership register which shall be a current record of a) each Member's name, mailing address, the amount and class or group of their membership interest(s); b) the date the Member became a Member of the Company; c) the amount of any cash contribution and a description and statement of the agreed value of any other contributions made or agreed to be made by a Member; d) the dates any additional contributions are to be made by a Member; e) any event the occurrence of which requires a Member to make additional contributions; and f) special allocations of profits and losses or similar items, if any.

### 7.04  Membership Interests Transfer Ledger

The Company shall keep a membership interests transfer ledger at its principal office showing the name and mailing address of each Member (or certificate holder); the date of transfer; whether it is an original issue or reissue; the number of Units issued on that date; the certificate number of the issued Units; and the amount paid or the agreed or fair market value of non-cash payments. For transfers, the ledger shall also show the person to whom and from whom the Units were transferred; the number of Units transferred or surrendered; the certificate number of the transferred or surrendered Units; the payment received by the Member; and the number of Units owned (balance) after the transactions.

### 7.05  Right to Examine Company Records

As provided by Section 101.502, TBOC, a Member of the Company or an assignee of a membership interest in the Company, or a representative of the Member or assignee, on written request and for a proper purpose, may examine and copy at any reasonable time and at the Member's or assignee's expense, records required to be kept under Sections 3.151 and 101.501, TBOC and other information regarding the business, affairs, and financial condition of the Company that is reasonable for the person to examine and copy.

The Company shall provide to a Member of the Company or an assignee of a membership interest in the Company, on written request by the Member or assignee sent to the company's principal office in the United States or, if different, the person and address designated in the Agreement, a free copy of the Certificate of Formation and Agreement, including any restatements of or amendments thereto, any Members' agreements restricting transfer of membership interests, and any tax returns specified in Section 101.501(a)(2), TBOC.

### 7.06  Books and Records of Account

The Company shall maintain correct and complete books and records of account, including accounts of its properties and business transactions, assets, liabilities, receipts, disbursements, gains, losses, capital, surplus, and membership interests. The Company bookkeeping procedures shall conform to generally accepted accounting practices for the business or businesses in which the Company is engaged. Subject to the foregoing, the chart of financial accounts shall be taken from, and designed to facilitate preparation of, current Company tax returns. Any surplus, including earned surplus, paid-in surplus, and surplus arising from a reduction of stated capital, shall be classified according to source and shown in a separate account.

### 7.07  Capital Accounts

A capital account shall be established and maintained for each Member. Each Member's capital account shall be:

1. Increased by:

a) That Member's cash capital contributions;

b) The fair market value of property contributed by that Member to the Company (net of liabilities secured by the contributed property that the Company is considered to assume or take subject to I.R.C. § 752, or equivalent section for LLCs not taxed as partnerships); and

c) The allocations to that Member of Company income and gain (or items thereof), including income and gain exempt from tax, and income and gain described in Treasury Regulation ("Treas. Reg.") § 1.704-1(b)(2)(iv)(g), but excluding income and gain described in Treas. Reg. § 1.704-1(b)(4)(i), or equivalent sections for LLCs not taxed as partnerships.

2. Decreased by:

a) The cash distributions to that Member;

b) The fair market value of property distributed to that Member by the Company (net of liabilities secured by the distributed property that the Member is considered to assume or take subject to under I.R.C. § 752 or equivalent section for LLCs not taxed as partnerships);

c) The allocations to that Member of Company expenditures described in I.R.C. § 705(a)(2)(B), or equivalent section for LLCs not taxed as partnerships; and

d) The allocations of Company loss and deduction (or items thereof), including loss and deduction described in Treas. Reg. § 1.704-1(b)(2)(iv)(g), but excluding items described in § 1.704-1(b)(2)(iii) and loss or deduction described in § 1.704-1(b)(4)(i) or (iii), or equivalent sections for LLCs not taxed as partnerships.

The Members' capital account shall also be maintained and adjusted as required and permitted by the provisions of Treas. Reg. § 1.704-1(b)(2)(iv) and (b)(4), or equivalent sections for LLCs not taxed as partnerships, including adjustments to reflect the allocations to the Members of depreciation, depletion, amortization, and gain or loss as computed for book purposes rather than the allocation of the corresponding items as computed for tax purposes, as required by Treas. Reg. § 1.704-1(b)(2)(iv)(g), or equivalent section for LLCs not taxed as partnerships. A Member who has more than one membership interest shall have a single capital account that reflects all his or her Units, regardless of the class of Units owned by that Member and regardless of the time or manner in which those Units were acquired. On the transfer of all or part of a Member's Units, the capital account of the transferor that is attributable to the transferred Units or part thereof shall carry over to the transferee Member in accordance with the provisions of Treas. Reg. § 1.704-1(b)(2)(iv)(l), or equivalent section for LLCs not taxed as partnerships.

### 7.08 Deficit Capital Accounts

Notwithstanding anything to the contrary contained in the Agreement, and notwithstanding any custom or rule of law to the contrary, to the extent that the deficit, if any, in the capital account of any Member results from or is attributable to deductions and losses of the Company (including non-cash items such as depreciation), or distributions of money pursuant to the Agreement to all Members in proportion to their respective Units, upon winding up and termination of the Company such deficit shall not be an asset of the Company and such Members shall not be obligated to contribute such amount to the Company to bring the balance of such Member's capital account to zero.

### 7.09 Federal Tax Classification of the Company

The Members intend that the Company be an eligible entity under 26 C.F.R. § 301.7701(1-3), and thus, that the Company may accept the default classification as a partnership (or if the Company only has one Member, as a sole proprietorship disregarded as a separate entity), or if all of the Members consent, may elect to be treated as a corporation for federal tax purposes. This election can only be changed every sixty (60) months (unless there has been a greater than fifty percent (50%) change in ownership of the Company, and the IRS has issued a favorable private letter ruling), and only with the written consent of all of the Members authorizing an agent to make the election. The Treasurer or the Tax Matters Partner shall forthwith arrange a consultation with the Company's tax advisors before determining whether to make the election or to accept the default classification.

### 7.10 Fiscal Year

The Company shall have the fiscal year determined by the Members and approved by the Internal Revenue Service ("IRS"). The Treasurer or Tax Matters Partner shall forthwith arrange a consultation with the Company's tax advisors to determine whether the Company is to have a fiscal year other than the calendar year. If so, the Treasurer or Tax Matters Partner shall file an election with the IRS as early as possible, and all correspondence with the IRS, including the application for an Employer Identification Number ("EIN"), shall reflect such non-calendar year election.

### 7.11 Company Seal

The Members may at any time adopt, prescribe the use of, or discontinue the use of, such seal as they deem desirable, and the Secretary shall cause such seal to be affixed to, impressed on, or reproduced on such documents as the Members may direct.

### 7.12 Maintenance of Records

The books, records, minutes, and ownership or membership records of the Company shall be maintained in written paper form, or another form capable of being

converted into written paper form within a reasonable time, in the principal United States office of the Company. The Company shall maintain in its registered office in the State of Texas, and make available to Members on reasonable request within a reasonable time, the street address of its principal United States office in which these records are kept.

## Article Eight — Winding Up

### 8.01  Events Requiring Winding Up

The Company shall wind up upon the first occurrence of any of the following:

1. The expiration of the period fixed for the duration of the Company in its Certificate of Formation, if not perpetual;

2. A voluntary decision to wind up the Company by written consent of ALL Members to the winding up;

3. An event specified in the governing documents of the Company as requiring the winding up or termination of the Company;

4. The occurrence of any event that terminates the continued membership of the last remaining Member; unless the legal representative or successor of the last remaining Member agrees to continue the Company and to become a Member of the Company, or designates another person who agrees to become a Member, both as of the date of the termination of the last remaining Member's membership in the Company. This agreement or designation must be made not later than ninety (90) days after the date of termination of the last remaining Member's membership in the Company; or

5. A decree by a court requiring the winding up or termination of the Company under Section 11.301(a), TBOC, or other law.

### 8.02  Winding Up

Upon the occurrence of an event requiring the winding up of the Company, the Company's affairs are to be wound up unless a revocation, as provided by Section 11.151, TBOC, or a cancellation, as provided by Section 11.152, TBOC, occurs. This includes cessation of business, mailing of notice of winding up to all creditors, liquidation of business and affairs, and the distribution of any surplus.

### 8.03  Persons Responsible for Winding Up Company

The winding up of the Company must be carried out by:

1. The Members, or one or more persons designated by the Members; who shall be paid reasonable compensation for such duties;

2. The legal representative or successor of the last remaining Member or one or more persons designated by the legal representative or successor, if the

event requiring the winding up of the Company is the termination of the continued membership of the last remaining Member of the Company; or

3.  A person appointed by the court to carry out the winding up of the Company under Sections 11.054, 11.405, 11.409, or 11.410, TBOC.

## Article Nine — Meetings and Voting

### 9.01 Notice of Meetings

The Secretary shall deliver written notice to each Member or committee member, as appropriate, at least ten (10), but not more than sixty (60), days before the date of the meeting. Such notice shall state the date, time, and location of the meeting, and, in the case of a special meeting or a meeting called for the purpose of considering a matter described by Section 101.356, TBOC, the business to be transacted at the meeting or the purpose of the meeting. Notice may be given personally, by mail, or by electronic transmission including, but not limited to, facsimile, electronic mail, or other means. A Member may specify the form of electronic transmission to be used to communicate notice. Notice shall be addressed to each recipient at such address as appears in the Company's records, or such address or number as the recipient has given to the Company for the purpose of notice.

#### 9.01(a)   Notice Considered Delivered

Notice is considered delivered under this section on the date notice is: deposited in the U.S. mail with postage paid in an envelope addressed to the person at the person's address as it appears on the Company's records; successfully transmitted to a facsimile number provided by the person for the purpose of receiving notice; successfully transmitted to an electronic mail address provided by the person for the purpose of receiving notice; or communicated to the person by any other form of electronic transmission consented to by the person.

Upon providing notice, the Secretary or other person sending notice shall sign and file in the Company Record Book a statement of the details of the notice given to each person. If such statement should later not be found in the Company Record Book, due notice shall be presumed.

#### 9.01(b)   Failure of Electronic Transmission

The Secretary shall cease to provide notice by electronic transmission to an address or number provided by a person if the Company is unable to successfully deliver by electronic transmission two consecutive notices, and the Secretary knows that delivery of those two electronic transmissions was unsuccessful. Notice by electronic transmission may be reinstated upon written request by the person. Inadvertent failure to treat the unsuccessful transmissions as a revocation of the address or number provided does not affect the validity of a meeting or other action.

**9.02  Waiver of Notice and Consent to Action**

If a person entitled to notice of a meeting participates in or attends the meeting, the participation or attendance constitutes a waiver of notice of the meeting, and the person is considered present at the meeting, unless the person participates in or attends the meeting solely to object to the transaction of business at the meeting on the ground that the meeting was not lawfully called or convened. Notice of a meeting is not required to be given to a Member or committee member entitled to notice, if the person entitled to notice signs a written waiver of notice of the meeting, regardless of whether the waiver is signed before or after the time of the meeting.

**9.03  Location of Meetings**

Meetings of the Company may be held at any location in or outside the State of Texas as may be designated by the Members. The location of such meetings shall be stated in the notice of the meeting or in a duly executed waiver thereof. A meeting may be held solely, or in part, by using a conference telephone or other suitable communications system authorized by Section 6.002, TBOC. The location of a meeting means either the physical location of the meeting, or in the case of an alternative form of meeting, the form of communications system to be used for the meeting and the means of accessing that communications system.

**9.04  Alternative Forms of Meetings**

The Members or a committee of the Members, may hold meetings by using a conference telephone or similar communications equipment, or another suitable electronic communications system, including videoconferencing technology or the Internet, or any combination, so long as the telephone or other equipment or system permits each person participating in the meeting to communicate with all other persons participating in the meeting.

If voting is to take place at the meeting, the Company must implement reasonable measures to verify that every person voting by means of remote communications is sufficiently identified, and keep a record of any vote or other action taken.

**9.05  Conduct of Meetings**

Each meeting shall be chaired by a person chosen by a majority of the votes represented at that meeting. The Chairman may appoint any person to act as meeting secretary, or the Secretary may serve if present. The meeting secretary shall keep minutes of the proceedings which shall be placed in the minute book of the Company.

**9.06  Proxies**

A Member may vote either in person or by proxy executed in writing by the Member or his or her duly authorized attorney-in-fact. Unless otherwise provided in the proxy or by law, each proxy shall be revocable and shall not be valid after eleven (11) months from the date of its execution, unless the proxy form conspicuously states

that it is irrevocable and the proxy is coupled with an interest, or as otherwise provided by law.

### 9.07 Dissent

A person who is present at a meeting at which action on any matter is taken, and who is entitled to vote on that action, shall be presumed to have assented to the action unless: a) his or her dissent is entered in the minutes of the meeting; b) his or her written dissent to such action is filed with the person acting as Secretary of the meeting before the adjournment thereof; or c) he or she delivers such dissent by registered mail to the Company's Secretary, or other authorized person, immediately after adjournment of the meeting. Such right to dissent shall not apply to any person who voted in favor of such action.

### 9.08 Adjournment and Notice of Adjourned Meetings

A quorum may adjourn any meeting to meet again at a stated hour on a stated day. Notice of the time and location where an adjourned meeting will be resumed need not be given to absent persons entitled to vote at the meeting if the time and location are fixed at the adjourned meeting. In the absence of a quorum, a majority of the votes present may adjourn until the time of the next regular meeting, or to a set time and location if notice is duly given to the absent persons entitled to vote at the meeting. Notice of the reconvening of an adjourned meeting is not necessary unless the meeting is adjourned for more than thirty (30) days past the date stated in the notice, in which case notice of the adjourned meeting shall be given as in the case of any special meeting.

### 9.09 Regular Meetings

Meetings for the management of the Company shall be held, without requiring call or notice, at such regularly repeating times and places as the Members designate.

### 9.10 Special Meetings

Special meetings may be called for any purpose at any time by the President, if any, or by any one or more Members holding in the aggregate at least ten percent (10%) of the voting interests of the Company. The party calling the meeting may do so only by written request sent by registered mail or delivered in person to the President or Secretary or other designated person. The Officer receiving the written request shall cause notice of the meeting to be sent to all the persons entitled to vote at such a meeting. If the Officer fails to give notice within ten (10) days from the date of its receipt, the person calling the meeting may fix the time of meeting and give the notice. Written notices of the special meeting, stating the time and location of the meeting, shall be mailed ten (10) days before, or otherwise sent so as to be received by each person entitled to vote at the meeting not later than two (2) days before the day appointed for the meeting. Notice of a special meeting must indicate an agenda. The meeting shall be confined to any agenda included with the notice; however, any

other actions may be adopted by the written consent of all the persons entitled to vote at the meeting, which may be secured after the meeting.

### 9.11 Annual Meeting of the Members

The time, location, and date of the annual meeting of the Members for the purpose of electing Managers, if any, and for the transaction of any other business as may come before the meeting, shall be set by a majority vote of the Members. If the day fixed for the annual meeting is on a legal holiday in the State of Texas, such meeting shall be held on the next business day. If elections are not held on the day designated, or at any adjournment of the meeting, the Members shall cause the elections to be held at a special meeting of the Members as soon thereafter as possible.

### 9.12 Failure to Hold Annual Meeting of the Members

If, within any thirteen (13)-month period, an annual meeting of the Members is not held, any Member may apply to a court of competent jurisdiction in the county in which the Company's principal office is located for a summary order that an annual meeting be held. Failure to hold annual meetings shall not require the winding up and termination of the Company.

### 9.13 Quorums

The presence (in person or by proxy) of a majority of the total number of membership interests or members of any committee constitutes a quorum for the transaction of business at any meeting of the Members or the committee, respectively.

### 9.14 Adjournment for Lack of Quorum

No business may be transacted in the absence of a quorum, or upon the withdrawal of enough persons to leave less than a quorum, other than to adjourn.

### 9.15 Action Taken by Vote, Written Consent, or Failure to Object

Except as otherwise specified in the Certificate of Formation or the Agreement, any action is effective if taken:

1.  By an affirmative vote of those persons having at least the minimum number of votes that would be necessary to take the action at a meeting at which each Member entitled to vote on the action is present and votes; or

2.  At a meeting of the Members at which a quorum is present, by the affirmative vote of a majority of the Members who are present and entitled to vote on the matter; or

3.  For an action required or authorized to be taken at an annual, regular, or special meeting of the Members, without holding a meeting, providing notice, or taking a vote, by written consent stating the action to be taken, and signed by the number of Members or committee members, as appropriate, necessary to have at least the minimum number of votes that would be nec-

essary to take the action at a meeting at which each Member or committee member, as appropriate, entitled to vote on the action is present and votes, and such consent has been filed in the Company Record Book and mailed by the Secretary to all the persons entitled to vote on the action; or

4.  With the consent of each Member of the Company entitled to vote on the matter. Consent of a Member may be established by either:

    a)  The signed written consent to action by the Member; or

    b)  The Member's failure to object to the proposed action in a timely manner, if the Member has full knowledge of the action. Full knowledge requires, at a minimum, that at least ten (10) business days prior to the date the action is to become effective, the Member has been mailed, or otherwise sent by reliable means, unmistakably plain, clear, and detailed notice of the nature and effective date of the action, the requirement that each Member consent, and the effect of failure to make an objection in a timely manner. Any objection received on or before the date the action is to become effective will be considered timely.

## 9.16 Determining Number of Votes Held by Members

Members' votes need not be by ballot unless a Member demands voting by ballot before the voting begins. Each unit of membership interest shall be entitled to one vote on each matter submitted to a vote of the Members, except to the extent membership interests of any class or group are limited or denied voting rights by the governing documents or by law. A Member shall continue to have the exclusive right to vote his or her Units after assignment of those Units until the assignee is admitted as a Member. Whenever the Agreement require a vote, approval, or consent by a majority, or other percentage, of the Members, they shall be read to require a vote, approval, or consent by the relevant percentage of the issued and outstanding Units.

### Article Ten — Execution of Company Agreement

The Agreement was duly executed by the initial Members on the first day of August, 2016.

By our signatures hereto, we hereby agree to be bound by all the provisions of the Agreement.

_____          _____
Eric Dee Smith, Member                    Spouse


_____          _____
Leonard Harris, Member                    Spouse




*Company Seal*

## INITIAL MEMBERS
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| Eric Dee Smith | | Cash | |
| **Mailing Address**<br>1935 Flour Bluff Drive<br>Corpus Christi, Texas 78418 | **Admission Date** | **Future Contributions** | **Date Due** |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | |

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| Leonard Harris | | Cash | |
| **Mailing Address**<br>1510 Madrid<br>Corpus Christi, Texas 78416 | **Admission Date** | **Future Contributions** | **Date Due** |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | |

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| | | | |
| **Mailing Address** | **Admission Date** | **Future Contributions** | **Date Due** |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | |

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| | | | |
| **Mailing Address** | **Admission Date** | **Future Contributions** | **Date Due** |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | |

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| | | | |
| **Mailing Address** | **Admission Date** | **Future Contributions** | **Date Due** |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | |

## STATEMENT OF CHANGE IN REGISTERED OFFICE, OR
## OF REGISTERED AGENT, OR BOTH,
## BY A TEXAS LIMITED LIABILITY COMPANY

The name of the Company as stated in the Certificate of Formation is CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C. (the ''Company'').

The Company's filing number is ___8025 13328___.

The street address of its present registered office as shown in the records of the Secretary of State of the State of Texas before filing this statement is:

1935 Flour Bluff Drive
Corpus Christi, Texas 78418

The address, including street address, city, state, and zip code, to which its registered office is to be changed is ☑ no change ☐ as follows:

_____

_____

_____

The name of its present registered agent, as shown in the records of the Secretary of State of the State of Texas, before filing this statement is Eric Dee Smith.

The name of its new registered agent is ☑ no change ☐ as follows:

_____.

The street address of the registered office and the street address of the registered agent's business, as changed, are the same.

Such change was authorized by the Company in the manner required by the Texas Business Organizations Code.

Dated this the ___11___ day of ___August___, 2016.

_Eric Dee Smith_
Authorized Member

---

CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.
Statement of Change in Registered Office, or of Registered Agent, or Both, Page 1-38

# MINUTES OF THE
# ORGANIZATIONAL MEETING
# OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

## CONTENTS

Article One — Authority to Act ................................................................. 2-1
Article Two — Identification of Meeting ................................................... 2-2
Article Three — Chairman and Secretary .................................................. 2-2
Article Four — Record Book ...................................................................... 2-2
Article Five — Certificate of Formation .................................................... 2-2
Article Six — Company Agreement ............................................................ 2-2
Article Seven — Seal .................................................................................. 2-2
Article Eight — Membership Interest Certificates and Records ................ 2-2
Article Nine — Officers .............................................................................. 2-3
Article Ten — Express Authority of Officers ............................................. 2-3
Article Eleven — Compensation of Officers and Members ....................... 2-4
Article Twelve — Bank Account ................................................................ 2-4
Article Thirteen — Banking Resolution ..................................................... 2-4
Article Fourteen — Issuance of Membership Interests ............................... 2-4
Article Fifteen — Waiver and Consent ....................................................... 2-5
Article Sixteen — Adjournment .................................................................. 2-6
Approval of Minutes ................................................................................... 2-6
Contents of Appendices to Minutes ........................................................... 2-6

## Article One — Authority to Act

BE IT REMEMBERED THAT the organizational meeting of the initial Members of CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C. a Texas Limited Liability Company, was held in Corpus Christi, Texas on the <u>first</u> day of <u>August, 2016</u> at one o'clock p.m.

The meeting was called by a majority of the Members named in the Certificate of Formation, which was duly filed in the office of the Texas Secretary of State and became effective on *08 / 03 / 2016*. Present at the meeting were all of the Members named in the Certificate of Formation. At this meeting, the following business was conducted, and on motions duly made, seconded, and carried, the following resolutions were adopted:

### Article Two — Identification of Meeting

RESOLVED, that this meeting is the organizational meeting of CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C. (the ''Company'').

### Article Three — Chairman and Secretary

RESOLVED, that Eric Dee Smith shall be, and hereby is, elected Chairman of the meeting and that Leonard Harris shall be, and hereby is, elected Secretary of the meeting.

### Article Four — Record Book

RESOLVED, that the Company shall maintain a Company Record Book containing the minutes of this meeting and all subsequent meetings of the Company, and such other documents as the Company shall from time to time direct.

### Article Five — Certificate of Formation

RESOLVED, that a file-marked copy of the Certificate of Formation of the Company and the original Certificate of Filing from the Texas Secretary of State shall be inserted in the Company Record Book.

### Article Six — Company Agreement

RESOLVED, that the Company Agreement presented to and considered at this meeting is adopted as the Company Agreement of the Company, and the Secretary of the Company is ordered to certify a copy of such Company Agreement and any appendices thereto, insert them in the Company Record Book, maintain them in the Company's principal place of business, and keep them open for inspection by the Members at all reasonable times during office hours.

### Article Seven — Seal

RESOLVED, that the form of seal presented to this meeting be, and hereby is, adopted as the Company's official seal, and that an impression thereof be embossed on the margin of these minutes to the right of this resolution, the Seventh Article of these Minutes.

*Company Seal*

### Article Eight — Membership Interest Certificates and Records

RESOLVED, that the Company hereby adopt that certain form of membership interest certificate presented to this meeting as the form that will be used to evidence ownership of membership interests of the Company, and the Secretary of the meeting is directed to attach a specimen copy of such certificate to the minutes of this meeting. The Members have considered the certificates in light of the Regulation governing

their content and have determined that the appropriate notices are present and conspicuous on the certificate as required.

## Article Nine — Officers

RESOLVED, that the following persons are hereby elected as Officers of the Company:

| | |
|---|---|
| Secretary: | Leonard Harris |
| President: | Eric Dee Smith |
| Vice President: | |
| Treasurer: | |
| IRS "Tax Matters Partner": | |

## Article Ten — Express Authority of Officers

RESOLVED, that the President of the Company, if any, be, and hereby is, authorized to purchase, sell, and convey any and all real and personal property of every kind and nature as may be determined by said Officer to be in the best interest of the Company for such price and on such terms, including part cash and part credit, all cash, or all credit, as said Officer may deem proper and in the best interest of the Company.

RESOLVED FURTHER, that the President, if any, be, and hereby is, authorized and empowered to enter into contracts; execute notes, deeds of trust, deeds, releases, leases, transfers, mortgages, mechanic's lien contracts, plats, easements, dedications, land use restrictions, and amendments thereto; and to execute such other instruments in writing affecting the title to real estate or other property belonging to the Company or otherwise, as in the judgment of the said Officer is deemed best for the Company, all of which, when so executed by said Officer, shall be for and on behalf of the Company and shall constitute the act and deed of the Company, and it shall not be necessary for the Secretary to attest to any instrument so executed by the President on behalf of the Company.

RESOLVED FURTHER, that the President, if any, be, and hereby is, authorized and empowered to borrow money on behalf of the Company in such amounts and on such terms as determined by said Officer to be in the best interest of the Company; as security therefore, to make and deliver security agreements and deeds of trust creating liens on the real and personal property owned by the Company; and to perform these actions as determined in said Officer's discretion to be in the best interest of the Company.

### Article Eleven — Compensation of Officers and Members

RESOLVED, that the salaries or compensation of all Officers and Members of the Company may be set, and may be changed from time to time, by simple resolution of the Members.

### Article Twelve — Bank Account

RESOLVED, that the Company establish in its name one or more deposit accounts with a bank chosen by the President and Treasurer, or the Members, if those offices have not been filled, on such terms and conditions as may be agreed on with said bank, and that the President and Treasurer of the Company be, and hereby are, authorized to establish all such accounts.

RESOLVED FURTHER, that the below-named and subscribed persons be, and hereby are, authorized to draw checks on the Company's accounts, with signatures duly certified to the bank by the Secretary of the Company, and the bank is hereby authorized to honor and pay any and all checks so signed, including those drawn to the individual order of any Officer or other person authorized to sign the same.

_Eric Dee Smith_
Signature

_(signature)_
Signature

ERIC DEE SMITH   MEMBER
Printed Name and Office

LEONARD HARRIS   member.
Printed Name and Office

_____
Signature

_____
Signature

_____
Printed Name and Office

_____
Printed Name and Office

### Article Thirteen — Banking Resolution

RESOLVED, that the Company hereby adopts by reference all of the resolutions and provisions of that certain printed form banking resolution presented at the meeting, and it is directed that a conformed copy thereof be attached to and made a part of the minutes of this meeting.

### Article Fourteen — Issuance of Membership Interests

RESOLVED, that the Company hereby authorizes the issuance of membership interests in the Company to its initial Members. "Units of Membership Interest" or "Units" means the units into which the membership interests in the Company are

divided for the purpose of providing a quantitative measurement of each Members' relative membership interest in the Company. The approval of this resolution is limited to the exact details of the transaction as listed in the "Initial Members" Appendix to the Company Agreement. The Members have considered the possibility that this issuance may be subject to securities regulation, and have taken the following course of action as required by the Company Agreement (check applicable item):

☐ There is attached to these minutes a written attorney's opinion, satisfactory to the Company, which states that currently effective registration statements exist under the Securities Act of 1933 and all applicable state acts; or

☐ There is attached to these minutes a written attorney's opinion, satisfactory to the Company, which states that neither federal nor state securities registration is required because the attorney has determined that the Units are not currently securities and will not become securities upon completion of the type of issuance or transfer proposed; or

☐ This transaction differs in no detail from the proposed transaction described in the attached written attorney's opinion, satisfactory to the Company, which states that the attorney has reviewed the facts of this proposed transaction, and under the facts as disclosed to him, there is no fraud under Rule 10b-5, and neither federal nor state securities registration is required because, even if the Units are securities, or become securities upon completion of this proposed transaction, the Units or transaction fall within an exemption from registration; or

☑ There is attached to these minutes a unanimous resolution of the Members who, having inquired into the issue and sought such legal counsel as they deem sufficient, authorized the proposed issuance or transfer and determined that neither federal nor state securities registration is required to complete this transaction because the transaction will fall under a securities exemption or the Units will not be considered securities upon completion of this issuance to the initial Members.

RESOLVED, that the Company issue _____ *100 %* _____ Unit(s) of Membership Interest to the person(s) listed in the "Initial Members" Appendix to the Company Agreement.

## Article Fifteen — Waiver and Consent

RESOLVED, that these Members, by their signatures affixed to the minutes of this organizational meeting, and by this resolution, do hereby waive notice of the time and location of this meeting, consent to the meeting, and do approve of the contents of the minutes of this organizational meeting.

### Article Sixteen — Adjournment

RESOLVED, that there being no further business to come before the organizational meeting of the Company, the meeting be duly adjourned.

The foregoing reflects all business conducted at the organizational meeting or through unanimous consent to action taken in lieu of the organizational meeting.

DATED the <u>first</u> day of <u>August, 2016</u>.

_____
Leonard Harris, Meeting Secretary

APPROVED:

_____
Eric Dee Smith, Meeting Chair

*Company Seal*

### Approval of Minutes

We, the undersigned Members acting as the governing authority, hereby approve the foregoing minutes of the organizational meeting of the Company and the appendices attached hereto.

_____
Eric Dee Smith, Member

_____
Leonard Harris, Member

### Contents of Appendices to Minutes

A) Specimen Membership Interest Certificate
B) Resolution Authorizing Issuance of Membership Interests to Initial Members
C) Banking Resolution

## RESOLUTION AUTHORIZING ISSUANCE OF MEMBERSHIP INTERESTS TO INITIAL MEMBERS OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

We, the undersigned, being all of the Members acting as the governing authority of the above-named limited liability company (the "Company"), have considered the possibility that this issuance may be subject to securities regulation, and have taken the following course of action as required by the Company Agreement.

We have inquired into the issue and sought such legal counsel as we deem sufficient, and hereby authorize the issuance of the Unit(s) of Membership Interest ("Units") described below and determine that neither federal nor state securities registration is required to complete this transaction because the transaction will fall under a securities exemption or the Units will not be considered securities upon completion of the transaction.

RESOLVED, that the Company issue _____100 %_____ Units to the person(s) listed in the "Initial Members" Appendix to the Company Agreement in the amount set forth by each name, for the consideration listed.

Adopted on the first day of August, 2016.

_Eric Dee Smith_____
Eric Dee Smith, Member

_____
Leonard Harris, Member

*Company Seal*

# BANKING RESOLUTION
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

RESOLVED, that the following bank, at the location shown below, is designated as a depository of the Company, and that one or more checking or savings accounts of the Company be established and maintained in its name at said bank:

Name of Bank: _____

Location: _____

RESOLVED FURTHER, that the following persons shall be and hereby are authorized, on behalf of the Company and as its own act, to sign, alone and with no countersignature, checks, drafts, notes, bills of exchange, acceptances, or other orders for the payment of money, and to endorse any checks, notes, bills, or other instruments owned by, held by, or endorsed to the Company, or to do any other acts convenient or necessary to the opening, maintenance, and closing of such accounts, and the deposit or withdrawal of funds therefrom:

Authorized Persons:   ERic Smith _____

_____

_____

_____

RESOLVED FURTHER, that said bank is authorized to honor and pay any and all checks and drafts of the Company signed as provided in this resolution, whether or not payable to the person or persons signing them; and that checks, drafts, bills of exchange, and other evidences of indebtedness may be endorsed for deposit to the account or accounts of the Company by any of the foregoing persons or by any other employee or agent of the Company, and may be endorsed for deposit or collection in writing or by stamp without designation of the person making such endorsement.

RESOLVED FURTHER, that any of the above-named persons shall be authorized to enter into a rental agreement in the name of the Company for one or more safe-deposit boxes in the vaults of said bank, and to have the right to access to and control of the contents of such safe-deposit boxes, including the right to remove the whole or any part of the contents thereof, and to surrender said boxes, releasing the bank from all liability with respect thereto.

RESOLVED FURTHER, that any of the said persons may execute an agreement or agreements with said bank relating to the opening, maintenance, or use of a night depository, and that upon such execution, the Company shall be bound by the terms and conditions thereof.

RESOLVED FURTHER, that the Secretary of the Company, by signature hereto, is authorized and directed to certify to said bank the due adoption and existence of this resolution and the names and specimen signatures of the persons presently authorized to sign as aforesaid. When any changes are made in the persons holding such offices, the Secretary shall certify the fact of such change and the name and specimen signature of each new person.

RESOLVED FURTHER, that the certificate by the Secretary of the Company as to the election or appointment of the authorized persons named in this resolution, and of their successors, shall be binding on the Company, and the authority conferred by this resolution shall remain in force until written notice of the revocation or modification hereof shall be delivered to an Officer of said bank.

Adopted on the 3 rd day of August , 2016.

_____
Leonard Harris, Secretary

_____
Eric Dee Smith, President

_____
Eric Dee Smith, Member

_____
Leonard Harris, Member

*Company Seal*

## WAIVER OF NOTICE OF THE ORGANIZATIONAL MEETING
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

We, the undersigned, being all of the Members acting as the governing authority of the above-named Company who are named in its Certificate of Formation, hereby agree and consent to hold the organizational meeting on the date and at the time and location stated below and hereby waive all notice of such meeting and of any adjournment thereof.

Date of Meeting: 8/1/16                    Time of Meeting: one p.m.

Location of Meeting: Corpus Christi

Dated the ___1st___ day of __August__, __2016__.

_____          _____
Member                                          Member

_____          _____
Member                                          Member

_____          _____
Member                                          Member

*Company Seal*

## UNANIMOUS CONSENT TO ACTION TAKEN
## IN LIEU OF ORGANIZATIONAL MEETING
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

We, the undersigned, being all of the Members acting as the governing authority of the above-named Company who are named in its Certificate of Formation, in lieu of an organizational meeting of the Company, do hereby individually and collectively consent by this writing to take the actions, to adopt the resolutions, and to transact the business of the Company as set out in the above and foregoing attached documents, whether such documents take the form of minutes of the organizational meeting or any other similar form.

Attached documents:

A) Company Agreement
B) Initial Members
C) Minutes of Organizational Meeting
D) Specimen Membership Interest Certificate
E) Resolution Authorizing Issuance of Membership Interests to Initial Members
F) Banking Resolution

Dated the ___1st___ day of __August__ , 2016 .

_Eric Dee Smith_
Member

_____
Member

_____
Member

_____
Member

_____
Member

_____
Member

*Company Seal*

# MINUTES OF THE
# GOVERNING AUTHORITY MEETING
# OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

A meeting of the Members, acting as the governing authority of the Company, was held at _Corpus Christi_ on the _1ST_ day of _August_, 2016 at _1 pm_ . The meeting was:

☑ a regular meeting, for which call and notice are dispensed with in accordance with the Company Agreement; or

☐ a special meeting, called by the Company's _____, for which notice was duly and timely given to each Member and filed immediately preceding these minutes in the Company Record Book; or

☐ a special meeting, called by the Company's _____, for which a written waiver of notice was signed by all Members and filed immediately preceding these minutes in the Company Record Book.

The undersigned Members of the Company, being a quorum of the Members of the Company, were present and participated throughout the meeting.

_Eric Dee Smith_ acted as Chairman of the meeting.

_Leonard Harris_ acted as Secretary of the meeting.

The minutes of the preceding governing authority meeting held on _08/01/2016_ were read and approved.

_Eric Dee Smith_ presented a general report of the business of the Company, and _Eric Dee Smith_ presented reports of the Company. The reports were filed with the minutes of this meeting.

The meeting adopted the resolutions shown on additional pages attached hereto. Each resolution was moved, seconded, and passed by the Members shown, and any Members dissenting to any resolution did so for the reasons stated therein.

Additional resolutions attached: ☑ No ☐ Yes, _____ pages.

The following additional documents have been appended to these minutes:

A) Officer's Reports:

B)

C)

The following persons were nominated and duly elected to the offices set beside their names to serve until their successors are chosen and qualified:

Secretary: _LEONARd HARRis_

President: _ERic DEE Smith_

Vice President: _____

Treasurer: _____

IRS "Tax Matters Partner": _____

There being no further business before the meeting, on motion duly made, seconded, and carried, the meeting was adjourned.

Dated the ___/ST___ day of ___August___, 2016.

_Eric Del Sart_
Meeting Chairman

_[signature]_
Meeting Secretary

_____
Member

_____
Member

_____
Member

_____
Member

_____
Member

_____
Member

*Company Seal*

## NOTICE OF GOVERNING AUTHORITY MEETING
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

PLEASE TAKE NOTICE THAT a meeting of the Members acting as the governing authority of the Company will be held on the date and at the time and location stated below. The meeting is a:

☐ regular meeting

☐ special meeting called by the Company's _____.

Date of Meeting: _____ Time of Meeting: _____

Location of Meeting: _____

Date Notice Sent: _____

The meeting shall consider and act on all matters and business which may properly come before the governing authority. Without limitation, you are advised that the meeting may consider any agenda that may be included with this notice.

_____
Secretary

*Company Seal*

## RECORD OF DELIVERING NOTICE OF
## A GOVERNING AUTHORITY MEETING
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

STATE OF TEXAS

COUNTY OF

KNOW ALL PERSONS BY THESE PRESENTS:

On the _____ day of _____, _____, I, the undersigned Secretary of the Company, personally delivered _____ copies of the attached notice of the governing authority meeting, one copy for each person whose name appears on the attached list of all persons to whom notice of the meeting is required to be given, and addressed to the respective postal address, facsimile number, or electronic mail address of each as therein set forth and shown in the Company records, so that each person to whom notice of the meeting is required to be given was duly given notice.

Notice delivered by postal mail was deposited in the U.S. mail with postage paid, each copy enclosed in a securely sealed, first-class, postage-paid envelope. Notice delivered by facsimile or electronic mail was successfully transmitted.

Having made this declaration, I have attached to it a list of all persons who received notice and a copy of the notice given, and filed it in the Company Record Book as part of the Company's records, all in the normal course of my duties, which include giving notice of meetings, making a statement of mailing of each notice, and filing such statement with a copy of the notice attached.

Dated the _____ day of _____, _____.

_____
Secretary

*Company Seal*

## WAIVER OF NOTICE OF
## GOVERNING AUTHORITY MEETING
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

We, the undersigned Members acting as the governing authority of the Company, do hereby severally waive notice of the date, time, and location of the governing authority meeting of the Company, and any adjournments thereof, and do hereby consent that it be held at the date, time, and location designated hereunder:

Date of Meeting: _____     Time of Meeting: _____

Location of Meeting: _____

Dated the _____ day of _____, _____.

_____     _____
Member                                Member

_____     _____
Member                                Member

_____     _____
Member                                Member

*Company Seal*

The following Members were neither present nor represented by proxy:

| Name | Votes | Name | Votes |
|------|-------|------|-------|
|      |       |      |       |
|      |       |      |       |
|      |       |      |       |

It was ordered that all proxies be filed with the minutes of this meeting. The Chairman stated that a majority of the outstanding votes were represented, a quorum was present, all prerequisites for the meeting were completed, and that the meeting was ready to transact any business before it.

The Meeting Secretary was directed to prepare a written waiver of notice, consent to meeting, and approval of minutes to be signed by each Member neither present nor voting at the meeting, and to file the same with these minutes.

The minutes of the previous meeting were read by the Meeting Secretary. On motion duly made, seconded, and carried, the minutes were unanimously approved.

The President then gave a general report of the business and finances of the Company. The President reported to the meeting the activities of the Officer(s) and proposed that the Members ratify those actions. Upon motion duly made, seconded, and unanimously carried, it was resolved that all proceedings of the Officers since the last membership meeting, and all acts taken by the Members acting as the governing authority and the Officer(s) of the Company be, and hereby are, approved.

The following persons were nominated as Officers, to serve for one year and until their successors should be elected and qualified:

| Name | Office |
|------|--------|
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |
|      |        |

The Chairman called for further nominations, but none were made. The following persons were elected as Officers:

| Name | Office |
|------|--------|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

The following additional action was taken at the meeting:

Additional pages attached: ☐ No   ☐ Yes, _____ pages.

There being no further business before the meeting, on motion duly made, seconded, and unanimously carried, the meeting was adjourned.

Dated this the _____ day of _____, _____.

_____
Meeting Secretary

## RATIFICATION

We, the undersigned Members, or duly authorized proxies thereof, having read these minutes, hereby approve, ratify, confirm, and consent to all business as reported herein.

_____        _____
Member                             Member


_____        _____
Member                             Member


_____        _____
Member                             Member


*Company Seal*


The following documents have been appended to these minutes:

A) Notice of Meeting

B) Record of Delivering Notice of Meeting

C) Officers' Reports

D)

E)

## MINUTES OF A SPECIAL MEMBERSHIP MEETING
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

A special membership meeting of the Company was held at the date, time, and location set forth below:

Date of Meeting: _____   Time of Meeting: _____

Location of Meeting: _____

Date Notice Sent: _____

This meeting was called by:

☐ the President; or

☐ Members holding in the aggregate at least ten percent (10%) of the votes.

_____ acted as Chairman of the meeting.

_____ acted as Secretary of the meeting and recorded these minutes. The Meeting Secretary took a roll call of Members. The following Members were present:

**IN PERSON:**

| Name | Votes | Name | Votes |
|------|-------|------|-------|
|      |       |      |       |
|      |       |      |       |
|      |       |      |       |

**BY PROXY:**

| Member's Name | Votes | Name of Proxy |
|---------------|-------|---------------|
|               |       |               |
|               |       |               |
|               |       |               |
|               |       |               |
|               |       |               |
|               |       |               |

The following Members were neither present nor represented by proxy:

| Name | Votes | Name | Votes |
|------|-------|------|-------|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

It was ordered that all proxies be filed with the minutes of this meeting. The Chairman stated that a majority of the outstanding votes was represented, a quorum was present, all prerequisites for the meeting were completed, and that the meeting was ready to transact any business before it.

The Meeting Secretary was directed to prepare a written waiver of notice, consent to meeting, and approval of minutes to be signed by each Member neither present nor represented by proxy at the meeting, and to file the same with these minutes.

The minutes of the previous meeting were read by the Meeting Secretary. On motion duly made, seconded, and carried, the minutes were unanimously approved as ☐ stated ☐ amended.

The President then gave a general report of the business and finances of the Company. The President reported to the meeting the activities of the Officer(s) and proposed that the Members ratify those actions. Upon motion duly made, seconded, and unanimously carried, it was resolved that all proceedings of the Members and Officer(s) since the last membership meeting, and all acts taken by the Members acting as the governing authority and the Officer(s) of the Company be, and hereby are, approved.

The following persons were nominated as Officers, to serve for one year and until their successors should be elected and qualified:

| Name | Office |
|------|--------|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

The Chairman called for further nominations, but none were made. The following persons were elected as Officers:

| Name | Office |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

The following additional action was taken at the meeting:

Additional pages attached: ☐ No   ☐ Yes, _____ pages.

There being no further business before the meeting, on motion duly made, seconded, and unanimously carried, the meeting was adjourned.

Dated this the _____ day of _____, _____.

_____
Meeting Secretary

## RATIFICATION

We, the undersigned Members, or duly authorized proxies thereof, having read these minutes, hereby approve, ratify, confirm, and consent to all business as reported herein.

| | | | |
|---|---|---|---|
| Member | Date | Member | Date |
| Member | Date | Member | Date |
| Member | Date | Member | Date |

*Company Seal*

The following documents have been appended to these minutes:

A) Call of a Special Membership Meeting

B) Notice of a Special Membership Meeting

C) Record of Delivering Notice of a Special Membership Meeting

D)

E)

## CALL OF A SPECIAL MEMBERSHIP MEETING
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

TO THE SECRETARY OF THE COMPANY:

A special membership meeting of the Company is hereby called by:

☐ the President, as shown by the President's signature hereto; or

☐ Members holding in the aggregate at least ten percent (10%) of the votes, as shown by the signature of each hereto.

Pursuant to the Company Agreement, the meeting is to be held at the principal office of the Company unless a different location is provided by its Members and included in this notice of the meeting. The meeting is to be held as follows:

Date of Meeting: _____   Time of Meeting: _____

Location of Meeting: _____

You are directed to give notice of the meeting, in the manner prescribed by the Company Agreement, to all Members not later than _____.

The business of the meeting is to include the items in the agenda attached hereto, and is limited to matters plainly stated therein.

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Signature | Date | Signature | Date |
| _____ | _____ | _____ | _____ |
| Signature | Date | Signature | Date |
| _____ | _____ | _____ | _____ |
| Signature | Date | Signature | Date |

Additional pages attached: _____ page agenda, containing _____ items.

## NOTICE OF A SPECIAL MEMBERSHIP MEETING
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

PLEASE TAKE NOTICE THAT a special meeting of the Members of the Company has been called by _____, who is authorized to call a meeting as _____.

Date of Meeting: _____ Time of Meeting: _____

Location of Meeting: _____

Date Notice Sent: _____

Only Members of record at the close of business on the _____ day of _____, _____ are entitled to received notice of, and to vote at, this meeting.

Members who do not expect to be personally present at the meeting are urged to appoint a proxy to vote for them. Forms for proxies will be provided upon request.

The business of the meeting is to include the agenda items set forth below, and, if it is a special meeting, is limited to matters plainly stated therein.

_____
Secretary

*Company Seal*

AGENDA:

Additional pages attached: ☐ No   ☐ Yes, _____ pages.

_____

CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.
Notice of a Special Membership Meeting, Page 3-15

# RECORD OF DELIVERING NOTICE
## OF A SPECIAL MEETING
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

STATE OF TEXAS

COUNTY OF

KNOW ALL PERSONS BY THESE PRESENTS:

On the _____ day of _____, _____, I, the undersigned Secretary of the Company, personally delivered _____ copies of the attached notice of a special meeting, one copy for each person whose name appears on the attached list of all persons to whom notice of the meeting is required to be given, and addressed to the respective postal address, facsimile number, or electronic mail address of each as therein set forth and shown in the Company records, so that each person to whom notice of the meeting is required to be given was duly given notice.

Notice delivered by postal mail was deposited in the U.S. mail with postage paid, each copy enclosed in a securely sealed, first-class, postage-paid envelope. Notice delivered by facsimile or electronic mail was successfully transmitted.

Having made this declaration, I have attached to it a list of all persons who received notice and a copy of the notice given, and filed it in the Company Record Book as part of the Company's records, all in the normal course of my duties, which include giving notice of meetings, making a statement of mailing of each notice, and filing such statement with a copy of the notice attached.

Dated the _____ day of _____, _____.


_____
Secretary


*Company Seal*

## UNANIMOUS CONSENT TO ACTION IN LIEU OF
## MEETING OF THE MEMBERS
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

We, the undersigned, being all the Members of the Company, by our signatures that follow hereby authorize the actions and resolutions written out in full below or on the attached initialed pages:

Dated this the _____ day of _____, _____.

_____         _____
Member                                     Member

_____         _____
Member                                     Member

_____         _____
Member                                     Member

*Company Seal*

**Members: Please initial any subsequent action pages, then sign this page.**

Additional pages attached: ☐ No   ☐ Yes, _____ pages of additional actions.

# WAIVER OF NOTICE,
## CONSENT TO MEETING OF MEMBERS,
## AND APPROVAL OF MINUTES
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

We, the undersigned, being all the persons entitled to vote at a meeting of the Members, do each for ourselves individually, by our signatures that follow, hereby waive written notice of the time, location, and purpose of the below-described membership meeting of the Company, and of any adjournments thereof, and do hereby consent to the holding of said meeting.

Date of Meeting: _____     Time of Meeting: _____

Location of Meeting: _____

We hereby approve any minutes of said meeting that may be attached hereto.

Additional pages attached: ☐ signature page(s) only; ☐ _____ pages, being the minutes of said meeting, plus signature page(s).

**MEMBERS: Please sign this page, initial any subsequent action pages, and sign the final page.**

_____
Signature of Member or Proxy

_____
Member's name printed

Proxy: print name or "none"
Number of interests:
Certificate number(s):
Date of signature:

_____
Signature of Member or Proxy

_____
Member's name printed

Proxy: print name or "none"
Number of interests:
Certificate number(s):
Date of signature:

_____
Signature of Member or Proxy

_____
Member's name printed

Proxy: print name or "none"
Number of interests:
Certificate number(s):
Date of signature:

_____

Signature of Member or Proxy

Proxy: print name or "none"
Number of interests:
Certificate number(s):

_____

Member's name printed

Date of signature:

_____

Signature of Member or Proxy

Proxy: print name or "none"
Number of interests:
Certificate number(s):

_____

Member's name printed

Date of signature:

*Company Seal*

## MEMBERS' CONSENT TO ACTION
## IN LIEU OF MEETING
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

We, the undersigned Members, or duly authorized proxies thereof, being no fewer than that number of Members whose votes would be required to take the following action at a meeting at which all the Members of the Company entitled to vote on the action were present and voted, by our signatures that follow hereby authorize the actions and resolutions written out in full below or attached hereto and initialed:

Additional pages attached: ☐ signature page(s) only; ☐ _____ pages of additional actions, plus signature page(s).

**MEMBERS:  Please initial this and any subsequent action pages, then sign the final page.**

_____        _____
Signature of Member or Proxy            Proxy: print name or "none"
                                        Number of interests:
                                        Certificate number(s):
_____        Date of signature:
Member's name printed


_____        _____
Signature of Member or Proxy            Proxy: print name or "none"
                                        Number of interests:
                                        Certificate number(s):
_____        Date of signature:
Member's name printed


_____        _____
Signature of Member or Proxy            Proxy: print name or "none"
                                        Number of interests:
                                        Certificate number(s):
_____        Date of signature:
Member's name printed


_____        _____
Signature of Member or Proxy            Proxy: print name or "none"
                                        Number of interests:
                                        Certificate number(s):
_____        Date of signature:
Member's name printed


_____        _____
Signature of Member or Proxy            Proxy: print name or "none"
                                        Number of interests:
                                        Certificate number(s):
_____        Date of signature:
Member's name printed


*Company Seal*

### APPOINTMENT OF PROXY
### FOR MEETING
### OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

I, the undersigned, am a Member of the above Company. I hereby revoke any previous proxies. I am the owner of the following Units of Membership Interest:

Certificate No.: _____

Number of Units: _____

Of Class or Group: _____

Retaining full power of substitution and revocation, I appoint

_____

my true and lawful proxy, and direct said proxy to attend and represent me at the meeting to be held on the date and at the time and location shown below, and any subsequent meeting(s), and any continuation or adjournment thereof, held within eleven (11) months of the date of execution of this appointment.

My said appointed proxy is authorized to represent me, and to vote, execute consents, and otherwise act for me in the same manner and with the same effect as if I were personally present and acting.

This proxy shall be of no effect at any meeting which I may personally attend.

Date of Meeting: _____ Time of Meeting: _____

Location of Meeting: _____

Signed the _____ day of _____, _____.


_____
Member



*Company Seal*

## WITHDRAWAL OF MEMBER(S)
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

To all it may concern:

    We, the undersigned Member(s), hereby tender my/our withdrawal from CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C. to take effect on _____.

    Dated the _____ day of _____, _____.

_____
Member

_____
Member

_____
Member

_____
Member

_____
Member

_____
Member

*Company Seal*

IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  08-09-2016

Employer Identification Number:
██████2949

Form:  SS-4

Number of this notice:  CP 575 B

CORPUS CHRISTI RAGE ARENA FOOTBALL
LLC
ERIC DEE SMITH MBR
1935 FLOUR BLUFF DR
CORPUS CHRISTI, TX  78418

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

### WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN ██████2949.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

              Form 1065                          03/15/2017

If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
*Accounting Periods and Methods*.

We assigned you a tax classification based on information obtained from you or your
representative.  It is not a legal determination of your tax classification, and is not
binding on the IRS.  If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).  Note:
Certain tax classification elections can be requested by filing Form 8832, *Entity
Classification Election*.  See Form 8832 and its instructions for additional information.

A limited liability company (LLC) may file Form 8832, *Entity Classification
Election*, and elect to be classified as an association taxable as a corporation.  If
the LLC is eligible to be treated as a corporation that meets certain tests and it
will be electing S corporation status, it must timely file Form 2553, *Election by a
Small Business Corporation*.  The LLC will be treated as a corporation as of the
effective date of the S corporation election and does not need to file Form 8832.

To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

(IRS USE ONLY)    575B              08-09-2016  CORP  B  9999999999  SS-4

**IMPORTANT REMINDERS:**

* Keep a copy of this notice in your permanent records. **This notice is issued only
  one time and the IRS will not be able to generate a duplicate copy for you.** You
  may give a copy of this document to anyone asking for proof of your EIN.

* Use this EIN and your name exactly as they appear at the top of this notice on all
  your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

    If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice. If you write, please tear off the stub
at the bottom of this notice and send it along with your letter. If you do not need to
write us, do not complete and return the stub.

    Your name control associated with this EIN is CORP. You will need to provide this
information, along with your EIN, if you file your returns electronically.

    Thank you for your cooperation.

                           Keep this part for your records.      CP 575 B (Rev. 7-2007)

-------------------------------------------------------------------------------------

    Return this part with any correspondence
so we may identify your account. Please                              CP 575 B
correct any errors in your name or address.
                                          9999999999

Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  08-09-2016
(    )      -                               EMPLOYER IDENTIFICATION N▮▮▮▮▮▮ 8▮▮▮▮▮▮▮
_____  _____    FORM:  SS-4              NOBOD

INTERNAL REVENUE SERVICE                  CORPUS CHRISTI RAGE ARENA FOOTBALL
CINCINNATI  OH   45999-0023               LLC
Իլ.ԼԼԼԼԼԼԼԼԼԼԼԼԼԼ.ԼԼ.ԼԼ.ԼԼ.ԼԼ             ERIC DEE SMITH MBR
                                          1935 FLOUR BLUFF DR
                                          CORPUS CHRISTI, TX  78418

## CONSULT THE COMPANY'S LEGAL
## AND TAX PROFESSIONALS

The following is not a substitute for the advice of an attorney. This section contains summary information on taxation and some of the initial forms you may need in setting up your company. It is provided only as background to prepare you for a consultation with your attorney and/or accountant. The information included, while current as of this writing, is subject to change at any time, without notice. Consult your legal and tax counsel for complete and current advice before proceeding.

# FEDERAL TAX MATTERS

Determining the correct answer to any given taxation question can require a careful review of the Internal Revenue Code ("I.R.C."), Title 26 of the Code of Federal Regulations ("26 C.F.R."), revenue rulings, private letter rulings, treasury decisions, and court decisions, all of which are subject to change frequently. Your legal and tax advisors are best suited to guide you through this complex and ever-changing area. For your convenience in preparing for this consultation, the following is a list of some of the publicly available sources of the forms, publications, statutes, and regulations referred to throughout this section:

Full-text search of IRS Revenue Rulings, Revenue Bulletins, and IRC links
  http://www.irs.gov/taxpros/article/0,,id=98137,00.html

IRS Forms and Publications
  http://www.irs.gov/formspubs/index.html

Title 26 of the US Code (the Internal Revenue Code or I.R.C.)
  http://uscode.house.gov/search/criteria.shtml
  http://www4.law.cornell.edu/uscode/26/
  http://uscode.house.gov/download/title_26.shtml

Title 26 of the Code of Federal Regulations (all IRS Treasury Regulations)
  http://www.access.gpo.gov/cgi-bin/cfrassemble.cgi?title=200726
  http://www.gpoaccess.gov/ecfr/
  http://cfr.law.cornell.edu/cfr/index.php

IRS Revenue Rulings
  http://www.taxlinks.com/index.htm
  http://www.irs.gov/businesses/lists/0,,id=98230,00.html

# FEDERAL EMPLOYER
# IDENTIFICATION NUMBER APPLICATION

## About Form SS-4, Application for Employer Identification Number

Form SS-4 should be filed as soon as possible. It tells the IRS that you have started a business, and asks the IRS to assign an "Employer Identification Number" (EIN) to your business. The EIN must appear on all later correspondence with the IRS. It is the business equivalent of a Social Security Number. Single-member LLCs that will have employees within 12 months must have 2 EINs, one for the member and one for the LLC.

If a wait of 4-5 weeks is acceptable, you may apply for an EIN by mailing a completed Form SS-4 to the address listed below:

> Internal Revenue Service Center
> Attn: EIN Operation
> Philadelphia, PA 19255

If a wait of up to 4 days is acceptable, you may apply for an EIN by faxing the completed form to the IRS, making sure to include your fax number:

> Fax-TIN 859-669-5760 (24/7)

If you need your EIN the same day, and you are an authorized Manager, Member, Officer, or "Third Party Designee," an IRS representative can assign the EIN by phone. Expect significant hold times when making the call. Keep the completed SS-4 for your records. If requested, mail or fax the form to the IRS within 24 hours.

> Tele-TIN 800-829-4933 (M-F, 7:00 a.m. to 10:00 p.m.)

Alternatively, fill out the SS-4 online and receive the EIN immediately. A two-week delay may apply before you can use it for all IRS transactions. Online filing is not available if you are forming a single-member LLC and do not already have a sole proprietor EIN.

> https://sa1.www4.irs.gov/modiein/individual/index.jsp

Lawyer's Aid Service can save you the time and trouble of filling out the SS-4 and contacting the IRS, and enable you to get an EIN in about one day. Simply call Lawyer's Aid Service at (888) 474-2112 for more details.

## Select Sources of Information Regarding the EIN

Publication 1635, Understanding Your EIN

# FEDERAL TAX CLASSIFICATION OF THE LLC

## The Check-the-Box Regulations

The information in this section is current as of this writing, but is subject to change at any time. IRS regulations promulgated in 1997 provide that an LLC may be classified for federal income tax purposes as 1) a partnership, 2) a corporation, or 3) a sole proprietorship disregarded as an entity separate from its owner. 26 C.F.R. § 301.7701-3. These so-called "check-the-box" regulations automatically classify every eligible LLC as either a partnership (if it has two or more Members) or as a disregarded entity/sole proprietorship (if it has one Member). Both single Member and multi-Member LLCs can elect to be taxed as corporations by filing Form 8832, Entity Classification Election or Form 2553, Election by a Small Business Corporation. 26 C.F.R. § 301.7701 et. seq.

## About Form 8832, Entity Classification Election and Instructions

Form 8832 must be filed within 75 days of making the election to be taxed as a corporation. The election becomes effective on the date specified on Form 8832 (but, with few exceptions, may not be more than 75 days prior to the date filed or 12 months after the date filed). Newly formed entities that make their election effective as of their formation date, are not subject to the general 60-month limitation on changing the election once made. 26 C.F.R. § 301.7701-3(c)(1)(iv). Consult your attorney for more details on these deadlines and limitations.

Direct or indirect LLC owners must attach Form 8832 to their federal income tax or information returns for the taxable year in which the election was effective.

Choosing partnership status or corporate status will result in very different tax consequences and no single choice will be right for every LLC. Consult with your legal and tax counsel to determine the most beneficial tax strategy for the Company and Members. Review the included instructions to Form 8832 carefully to ensure that your entity is an "eligible entity" and that all proper steps are taken in a timely manner should you choose to take the election. The IRS will notify the entity if its election is rejected or accepted within about 60 days of filing the election.

## About Form 2553, Election by a Small Business Corporation

An LLC that wishes to be taxed as an S corporation should file Form 2553 instead of Form 8832. The LLC will be treated as a corporation as of the effective date of the S corporation election. For calendar year taxpayers, Form 2553 must usually be filed by March 15th to be effective for the current year. The IRS will generally notify the LLC if its election is accepted or not, and if accepted, when it will take effect, within 60 days after it has filed Form 2553.

Form **8832**
(Rev. January 2012)
Department of the Treasury
Internal Revenue Service

## Entity Classification Election

OMB No. 1545-1516

| | | |
|---|---|---|
| **Type or Print** | Name of eligible entity making election | Employer identification number |
| | Number, street, and room or suite no. If a P.O. box, see instructions. | |
| | City or town, state, and ZIP code. If a foreign address, enter city, province or state, postal code and country. Follow the country's practice for entering the postal code. | |

▶ Check if: ☐ Address change    ☐ Late classification relief sought under Revenue Procedure 2009-41
☐ Relief for a late change of entity classification election sought under Revenue Procedure 2010-32

### Part I    Election Information

**1** **Type of election** (see instructions):

**a** ☐ Initial classification by a newly-formed entity. Skip lines 2a and 2b and go to line 3.
**b** ☐ Change in current classification. Go to line 2a.

**2a** Has the eligible entity previously filed an entity election that had an effective date within the last 60 months?

☐ **Yes.** Go to line 2b.
☐ **No.** Skip line 2b and go to line 3.

**2b** Was the eligible entity's prior election an initial classification election by a newly formed entity that was effective on the date of formation?

☐ **Yes.** Go to line 3.
☐ **No.** Stop here. You generally are not currently eligible to make the election (see instructions).

**3** Does the eligible entity have more than one owner?

☐ **Yes.** You can elect to be classified as a partnership or an association taxable as a corporation. Skip line 4 and go to line 5.
☐ **No.** You can elect to be classified as an association taxable as a corporation or to be disregarded as a separate entity. Go to line 4.

**4** If the eligible entity has only one owner, provide the following information:

**a** Name of owner ▶ ------------------------------------------------------------------------------------
**b** Identifying number of owner ▶ ------------------------------------------------------------------

**5** If the eligible entity is owned by one or more affiliated corporations that file a consolidated return, provide the name and employer identification number of the parent corporation:

**a** Name of parent corporation ▶ -----------------------------------------------------------------
**b** Employer identification number ▶ -------------------------------------------------------------

**For Paperwork Reduction Act Notice, see instructions.**          Cat. No. 22598R          Form **8832** (Rev. 1-2012)

Form 8832 (Rev. 1-2012)                                                                                                                            Page **2**

| **Part I** | **Election Information** (Continued) |

**6**   **Type of entity** (see instructions):

**a**  ☐ A domestic eligible entity electing to be classified as an association taxable as a corporation.
**b**  ☐ A domestic eligible entity electing to be classified as a partnership.
**c**  ☐ A domestic eligible entity with a single owner electing to be disregarded as a separate entity.
**d**  ☐ A foreign eligible entity electing to be classified as an association taxable as a corporation.
**e**  ☐ A foreign eligible entity electing to be classified as a partnership.
**f**  ☐ A foreign eligible entity with a single owner electing to be disregarded as a separate entity.

**7**   If the eligible entity is created or organized in a foreign jurisdiction, provide the foreign country of
organization ▶ ------------------------------------------------------------------------------------------------------------------------------

**8**   Election is to be effective beginning (month, day, year) (see instructions) . . . . . . . . . . . . . ▶ _____

**9**   Name and title of contact person whom the IRS may call for more information       **10** Contact person's telephone number

### Consent Statement and Signature(s) (see instructions)

Under penalties of perjury, I (we) declare that I (we) consent to the election of the above-named entity to be classified as indicated above, and that I (we) have examined this election and consent statement, and to the best of my (our) knowledge and belief, this election and consent statement are true, correct, and complete. If I am an officer, manager, or member signing for the entity, I further declare under penalties of perjury that I am authorized to make the election on its behalf.

| Signature(s) | Date | Title |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Form **8832** (Rev. 1-2012)

## FEDERAL TAX RETURNS AND RELATED FILINGS

### Income Tax

Corporations, S corporations, limited liability companies, and partnerships must use the federal income tax forms and filing deadlines appropriate for their type of entity. Discuss the table following this section with your tax advisors to determine which forms your business must use to file its income tax.

### Employment and Self-Employment Taxes

Employment tax requirements apply to all types of business entities. Employers are responsible for Social Security, Medicare, withheld income tax, federal unemployment tax, and in some cases nonpayroll withholding (on pensions, IRAs, etc.). Monthly deposits may be required by the federal government.

Self-employment tax (SE tax) is a Social Security and Medicare tax originally for individuals working for themselves, similar to the taxes withheld from the pay of most wage earners. The owners of a business entity will have to pay SE tax if their positions make them the equivalent of limited partners, and the entity pays them for services. For example, shareholders in single shareholder corporations and Members in LLCs that file partnership returns generally pay self-employment tax.

As of this writing, the SE tax rate is 12.4% for Social Security (old-age, survivors, and disability insurance) plus 2.9% for Medicare (hospital insurance) for a total of 15.3%. In 2008, only the first $102,000 of combined wages, tips, and net earnings is subject to any combination of the social security part of SE tax, Social Security tax, or railroad retirement (tier 1) tax. All net earnings over $400 are subject to the Medicare tax.

A person may deduct half the SE tax in figuring adjusted gross income. This deduction does not affect net earnings from self-employment or SE tax. Discuss the table following this section with your tax advisors to determine which forms the Company must use to file its employment and/or self-employment taxes.

### Excise Taxes

Excise taxes include items such as fuel taxes, retail tax, ship passenger tax, luxury tax, communications and air transportation taxes, and manufacturer's taxes. Discuss the table following this section and Publication 510, Excise Taxes with your tax advisors to determine which forms to use to file excise taxes, if any.

### Estimated Tax

Generally, taxes must be paid, including self-employment tax, by making regular payments of estimated tax during the year. As of this writing, it appears that

entities taxed as sole proprietorships or partnerships must make estimated tax payments if they expect to owe tax of $1,000 or more when they file their returns. Entities taxed as corporations generally have to make estimated tax payments if they expect to owe tax of $500 or more. A penalty may be assessed if not enough estimated tax is paid. Discuss the table following this section with your tax advisors to determine whether to file estimated taxes and which forms to use.

**Table of Federal Tax Requirements**

| Entity Classification | Possible Tax Due | Form |
|---|---|---|
| **Sole Proprietorship** ("disregarded entity") | Income tax | Form 1040, U.S. Individual Income Tax Return AND |
| | | Schedule C, Profit or Loss From Business or Schedule C-EZ, Net Profit From Business OR |
| | | Schedule E, Supplemental Income and Loss, OR |
| | | Schedule F, Profit or Loss from Farming |
| | Self-employment tax | Form 1040 Schedule SE, Self-Employment Tax |
| | Estimated tax | Form 1040-ES, Estimated Tax for Individuals |
| | Excise taxes | Form 720, Quarterly Federal Excise Tax Return and others |
| Employment Taxes | Social Security and Medicare taxes (FICA), and income tax withholding | Form 945, Annual Return of Withheld Federal Income Tax (for non-payroll items only) AND |
| | | Form 941, Employer's Quarterly Federal Tax Return OR |
| | | Form 943, Employer's Annual Federal Tax Return for Agricultural Employees |
| | Federal unemployment (FUTA) tax | Form 940, Employer's Annual Federal Unemployment Tax Return (FUTA) |
| | Deposit employment taxes | Form 8109, Federal Tax Deposit Coupon or Electronic Federal Tax Payment System (EFTPS) |

| Entity Classification | Possible Tax Due | Form |
|---|---|---|
| **Partnership** | Annual return of income | Form 1065, U.S. Return of Partnership Income OR Form 1065B, U.S. Return of Income for Electing Large Partnerships |
| | | Form 1065 Schedule D, Capital Gains and Losses |
| | | Form 1065 Schedule K-1, Partner's Share of Income, Credits, Deductions, etc. |
| | Employment taxes | Same as sole proprietorship |
| | Excise taxes | Same as sole proprietorship |
| **Each partner in a partnership** | Income tax | Form 1040 Schedule E, Supplemental Income and Loss |
| | Self-employment tax | Same as sole proprietorship |
| | Estimated tax | Same as sole proprietorship |
| **Corporation** | Income tax | Form 1120, U.S. Corporation Income Tax Return or Form 1120-A, U.S. Corporation Short-Form Income Tax Return |
| | | Form 1120 Schedule D, Capital Gains and Losses |
| | | Form 4797, Sales of Business Property (for reporting losses on § 1244 stock) |
| | Estimated tax | Form 1120-W, Estimated Tax for Corporations |
| | Employment taxes | Same as sole proprietorship |
| | Excise taxes | Same as sole proprietorship |

## Information Returns

In addition to the returns listed above, a variety of information returns may be required. Any person, including a corporation, LLC, partnership, or individual who makes reportable transactions during the calendar year, must file information returns to report those transactions to the IRS. Persons required to file information returns to the IRS must also furnish statements to the recipients of the income. See http://www.irs.gov/govt/fslg/article/0,,id=110125,00.html for more details.

**Select Sources of Information Regarding Federal Tax Returns and Filings**

Publication 3402, Tax Issues for Limited Liability Companies
Publication 334, Tax Guide for Small Business (For Individuals Who Use Schedule C or C-EZ)
Publication 541, Partnerships
Publication 542, Corporations
Publication 15 Circular E, Employer's Tax Guide
Publication 15-A, Employer's Supplemental Tax Guide
Publication 15-B, Employer's Tax Guide to Fringe Benefits
Publication 505, Tax Withholding and Estimated Tax
Publication 533, Self-Employment Tax
Publication 509, Tax Calendars for 2016
Publication 583, Starting a Business and Keeping Records
Publication 510, Excise Taxes for 2016

# STATE TAX MATTERS

Tax laws change frequently. Rely on your legal and tax counsel.

## THE TEXAS FRANCHISE TAX, AKA THE MARGIN TAX

### Historical Background

Historically, all entities formed in Texas or doing business in Texas as corporations or limited liability companies were subject to a special tax called a franchise tax. These entities paid the greater of 0.25% of "Net Taxable Capital" or 4.5% of "Net Taxable Earned Surplus" – both federal tax terms – per year. Other entities, such as limited partnerships, were completely exempt from the franchise tax. This treatment created a loophole where businesses could utilize limited partnerships in their ownership or management structure to avoid paying franchise tax. The Texas Legislature closed these loopholes in 2006, significantly changing the way the franchise tax system would be imposed in Texas. The new law was substantially updated and refined by the passage of HB 3928 in June 2007. The new law affects all franchise tax reports due on or after January 1, 2008.

### Major Changes Introduced by the "Margin Tax"

The most significant changes to the franchise tax system include the following:

1. The list of taxable entities subject to the franchise tax expanded greatly to include most entities that enjoy protection from liability, including limited partnerships, limited liability partnerships, and professional associations. (See Franchise Tax Rule 3.581 for a complete list of taxable entities.)

2. Sole proprietorships, general partnerships where all partners are natural persons, and passive entities, as defined under Texas law, are not taxable. (See Franchise Tax Rule 3.582 for a description of passive entities.) Certain nonprofit entities and others continue to be exempt under the Texas tax code, similar to prior law. (See Franchise Tax Rule 3.583.)

3. Taxable entities with total revenue less than or equal to $300,000.00 or owing tax of less than $1,000.00 owe no tax. (See Rule 3.584(d)(3)). Entities earning over $300,000.00 and less than $900,000.00 are entitled to tax discounts of 20% to 80%. (See Franchise Tax Rule 3.584(d)(4) for details.)

4.  Taxable entities pay a tax of 1%, or 1/2% for retailers and wholesalers, on their "taxable margin" — calculated as the lesser of revenue minus a) cost of goods sold, b) compensation, or c) 30% of revenue, multiplied by receipts apportioned to Texas, and reduced by various credits or discounts. (See Rule 3.584(d)(1) and (2) for details on tax calculation. See Franchise Tax Rule 3.588 for details on cost of goods sold. See Franchise Tax Rule 3.589 for details on compensation.)

5.  Taxable entities can select the simpler "E-Z" option to pay a flat 0.575% of gross receipts apportioned to Texas, if they earned under $10 million dollars that year. (See Rule 3.584(d)(5). See Franchise Tax Rule 3.391 for details on apportionment.)

6.  Groups of entities with over 50% shared ownership engaged in a unified business must now file combined franchise tax reports. (See Franchise Tax Rule 3.590 for details.)

**Franchise Tax Reporting Requirements**

Franchise tax reporting requirements and deadlines have changed very little under the new law. The franchise tax is still paid as part of an annual report. A company's initial report is due one (1) year and eighty-nine (89) days after the company's "beginning date" in Texas, which for an entity formed in Texas is the date on which the formation takes effect. Tex. Tax Code § 171.001(b)(2)(A), Franchise Tax Rule 3.544(a)(1)(A)(i). Thereafter, most taxable entities file an annual report each May 15 and pay the franchise tax. Tex. Tax Code § 171.152(c). Both penalties and interest might apply if a company fails to report or pay the tax on time. Under the new system, the Comptroller will no longer mail out preprinted report forms. Businesses will be able to choose between downloading and printing a form, or submitting their reports using an online "smart" form. Report packets for No Tax Due (Form 05-163), E-Z Computation (Form 05-169), Long Form (Forms 05-158A and 05-158B), and Extension (Forms 05-164 and 05-165) forms will be available at the Comptroller's website in initial, annual, and final versions. After April 14, 2008, submissions and payments may be made electronically.

Corporations and limited liability companies must also file a Public Information Report (Form 05-102) as described in Tex. Tax Code §171.203, due at the same time each initial and annual report is due. Franchise Tax Rule 3.584(i)(2). Other taxable entities must file an annual Ownership Information Report (Form 05-167) as described in Tex. Tax Code §171.201 and §171.202. Franchise Tax Rule 3.584(i)(1). Failure to sign or file these information reports results in the forfeiture of corporate or business privileges. Tax Code §171.251, Franchise Tax Rule 3.584(i)(3). Taxable entities that do not owe any tax **must** still file an information report.

To help businesses understand the essentials of the new law, Lawyer's Aid has included a compilation of the most clear and succinct documents prepared by the Texas Comptroller at the end of this state tax section.

**Select Sources of Information Regarding the Texas Franchise Tax**

Franchise Tax General Information (with links to statutes and rules)
http://www.cpa.state.tx.us/taxinfo/franchise/index.html
http://www.cpa.state.tx.us/taxinfo/franchise/faq_tax_ent.html
http://www.cpa.state.tx.us/taxinfo/franchise/webinars.html
http://www.cpa.state.tx.us/taxinfo/taxpubs/tx98_806.pdf
http://www.cpa.state.tx.us/taxinfo/taxforms/HB3Calc.pdf

Franchise Tax Report Forms and Instructions
http://www.cpa.state.tx.us/taxinfo/taxforms/05-forms.html
http://www.cpa.state.tx.us/taxinfo/taxforms/05-392.pdf

Franchise Tax Statute and Rules
http://tlo2.tlc.state.tx.us/statutes/docs/TX/content/htm/tx.002.00.000171.00.htm
http://www.window.state.tx.us/taxinfo/rulendx/ruleindex.html

# NEW FRANCHISE TAX CALCULATION

The worksheet below calculates taxable margin on a separate entity basis. The worksheet will calculate an amount of tax due based upon the amounts that are entered.

HOWEVER, if your annualized total revenue is less than or equal to $300,000, or your tax due is less than $1,000, you will owe no tax. All taxable entities must file a report, even if no tax is due.

If your annualized total revenue is $10 million or less, you are eligible to use the E-Z computation for calculating your tax. See the line 11 instructions for additional information.

SPECIAL NOTE TO TAXABLE ENTITIES THAT ARE PART OF AN AFFILIATED GROUP: Each taxable entity that is part of an affiliated group engaged in a unitary business shall file a combined report in lieu of individual reports. All members of a combined group must use the same method to compute margin (i.e. cost of goods sold, compensation or 70%). See instructions for additional information. However, each member of a combined group may use the worksheet below to provide an estimate of the individual member's portion of the combined group's tax liability before eliminations.

| ANNUALIZED REVENUE |
| --- |
| *(see instructions on back.)* |
| Number of days in report period |
| 365 |
| Total revenue for report period |
| Annualized amount |

## STEP 1. MARGIN

*See instructions below calculator.*

1a. TOTAL REVENUE ........................................................................................

1b. COST OF GOODS SOLD - Unless otherwise provided in HB3, taxable entities that provide only services will not have a cost of goods sold and must use the compensation deduction or 70% below. ......

1c. COGS MARGIN - Line 1a minus line 1b. ..............................................................

2a. TOTAL REVENUE ........................................................................................

2b. WAGES AND CASH COMPENSATION - W2 Medicare wages and tips plus stock awards and stock options deducted for federal income tax *(may not exceed $300,000 for any single employee).* ..........

2c. EMPLOYEE BENEFITS - Employer's Cost of retirement contributions, employee health insurance and worker's compensation. ..........

2d. COMP MARGIN - Line 2a minus (lines 2b and 2c). ....................................................

3a. TOTAL REVENUE ........................................................................................

3b. % MARGIN - Equals 70% of line 3a. ..................................................................

4. MARGIN - Enter the least of lines 1c, 2d or 3b. ......................................................

## STEP 2. APPORTIONMENT

5. TEXAS GROSS RECEIPTS ................................................................................

6. EVERYWHERE GROSS RECEIPTS ..........................................................................

7. APPORTIONMENT FACTOR - Line 5 divided by line 6. ....................................................

## STEP 3. TAXABLE MARGIN

8. TAXABLE MARGIN - Line 4 multiplied by line 7. ......................................................

## STEP 4. TAX DUE

9. TAX DUE BEFORE DISCOUNT OR CREDITS
    - Multiply line 8 by ☐ 0.5% for wholesalers and retailers or ☐ 1% for other taxable entities. ..........

10. CREDITS ...............................................................................................

11. E-Z COMPUTATION (if eligible) - Line 3a times line 7 times 0.00575 ..................................

12. DISCOUNT (if eligible) ...............................................................................

13. NET TAX DUE - Line 9 minus (lines 10 and 12) *OR* line 11 minus line 12. *(If less than $1,000, you owe no tax. Cannot be less than zero.)* ..........

THIS IS NOT A TAX REPORT - DO NOT FILE THIS DOCUMENT

## TEXAS EMPLOYMENT TAX

All employers must register with the Texas Workforce Commission (TWC). The TWC collects all unemployment taxes for workers employed in Texas. After the employer completes the initial forms and submits the data to TWC, they will review the responses and notify the employer by mail whether or not it should pay state unemployment tax to Texas, and the assigned tax rate. After the employer has been assigned an account number, it will begin receiving quarterly reporting forms.

During the month following each calendar quarter (April, July, October, and January), each employer submits an Employer's Quarterly Report. This report must show the total amount of gross wages paid during the quarter and the total amount of taxable wages paid. The report contains a wages list stating each employee's total gross wages paid for the quarter. Employees are listed by social security number and name. As of July 1, 2007, employers with 10 or more employees must submit their quarterly wage reports electronically.

The first $9,000 paid to an employee by an employer during a calendar year constitutes "taxable wages." "Wages" generally means all compensation paid for personal services, including the cash value of all compensation paid in any medium other than cash and gratuities received by any employee in the course of employment to the extent that the gratuities are considered as wages in the computation of taxes under the Federal Unemployment Tax Act, 26 U.S.C. § 3301 et seq. Wages are reported when they are paid rather than when they are earned or accrued.

The amount of tax to be paid by an employer is computed by multiplying the amount of taxable wages paid during the quarter by the effective tax rate of the employer. New employers who do not acquire an existing business start at a tax rate of 2.70% and continue to pay at this rate until the employer's account is chargeable with claims for unemployment benefits for four complete quarters. At the end of this period and for each year thereafter, the employer's tax rate is computed based upon the amount of unemployment insurance benefits that former employees receive along with a number of statewide factors. This computed rate is called the Employer's General Tax Rate.

Employers subject to state unemployment tax are required to display printed posters at each worksite. These posters are provided by TWC and provide general information about filing a claim for unemployment benefits, Texas Payday Law requirements, and a schedule of the employer's paydays.

### Select Sources of Information Regarding the Texas Employment Tax

Employment Tax General Information
    http://www.twc.state.tx.us/customers/bemp/bempsub3.html

TWC Forms and Instructions
      http://www.twc.state.tx.us/ui/tax/taxinstruct.html

TWC Employer Tax Information Online (ETIO)
      http://www.twc.state.tx.us/ui/tax/emtaxinfo.html

Texas Unemployment Compensation Act (Labor Code, Chapter 201)
      http://www.twc.state.tx.us/laws/tuca/enabstats.html#txlaborcode
      http://tlo2.tlc.state.tx.us/statutes/la.toc.htm

TWC Rules
      http://www.twc.state.tx.us/twcinfo/rules/twcrules.html

Or Contact the Texas Workforce Commission
      http://www.twc.state.tx.us/
      http://www.twc.state.tx.us/twcinfo/contactus.html

## TEXAS SALES AND USE TAX

When a business entity sells taxable items (tangible personal property or taxable services), it must collect state sales or use tax plus the appropriate local sales or use taxes. Cities, counties, transit authorities, and special purpose districts may all impose a local tax. Usually, local taxes apply to the same goods and services as does the state tax. With some exceptions, local taxes apply to services the same as to tangible personal property.

Depending on the anticipated sales volume for the business, it will file sales tax reports quarterly, monthly, or yearly. Reports are usually filed monthly, due on the 20th of the month following the sales month. Preprinted report forms will be sent by the Comptroller in advance of the due date. You can also file online.

There is a difference between *sales* tax and *use* tax when it comes to deciding whether the business needs to collect tax for a local taxing jurisdiction. Historically, local taxes have not been able to exceed a total of 2 percent. First, collect any local sales taxes; then, collect local use taxes in the following order: city, county, special purpose districts, and transit tax. But, don't collect a local *use* tax if the tax cannot be collected at its full rate without going over the 2 percent maximum for all local taxes.

The business will need Form AP-157, the Texas Sole Owner Application for Sales Tax Permit. (If the business has more than one owner, use Form AP-201.) The business may need to post a bond or other security for this permit. Complete Form 01-707, Texas Sales and Use Tax Bond-Security Information, and submit it with the application.

### Select Sources of Information Regarding Texas Sales and Use Tax

Sales and Use Tax General Information with Links to Statutes and Rules
        http://www.window.state.tx.us/taxinfo/sales/index.html

Sales and Use Tax forms
        http://www.window.state.tx.us/taxinfo/taxforms/01-forms.html

Or Contact the Texas State Comptroller
        Email:  tax.help@cpa.state.tx.us
        Phone:  1-800-252-5555
        Mail:    Texas Comptroller of Public Accounts, PO Box 13528, Capitol
                    Station, Austin, Texas 78711-3528

## TEXAS PROPERTY TAX

If the business owns tangible personal property on January 1 that is used to produce income, the property must be reported on a rendition form to the local appraisal district after January 1 and before April 15 of each year. The business must report all inventories, equipment, and machinery. Tax collection starts around October 1 as tax bills go out. Taxpayers have until January 31 of the following year to pay their taxes. On February 1, penalty and interest charges begin accumulating on most unpaid tax bills. For additional information, contact the local county appraisal district. See the government pages of the local telephone directory for telephone numbers.

### Select Sources of Information Regarding Texas Property Taxes

Property Tax Forms
http://www.window.state.tx.us/taxinfo/taxforms/02-forms.html

2007 Property Tax Code
http://tlo2.tlc.state.tx.us/statutes/pr.toc.htm

Texas Taxes
http://www.window.state.tx.us/taxes/

Tax Due Date Calendars
http://www.window.state.tx.us/taxinfo/calendar/index.html

Texas Tax Publications
http://www.cpa.state.tx.us/taxinfo/taxpubs/taxpubs.html

Index to Texas Tax Rules by Tax
http://www.window.state.tx.us/taxinfo/rulendx/ruleindex.html

# MEMBERSHIP INTEREST ISSUANCE
# AND TRANSFER INSTRUCTIONS

## OVERVIEW

The Company Agreement directs that whenever Units of Membership Interest ("Units") are sold or transferred, the procedures in this section must be followed to the letter, unless superceded by the instructions of the Company's attorney (see Company Agreement Article 4.21, Sale or Transfer of Membership Interests).

**Errors in issuance may open the door to possible civil and criminal penalties for violating the laws governing the sale of Units in a company (securities violations), loss of valuable tax benefits, lawsuits, financial loss, refund of payments for membership interest, or charges of fraud against the Company and its agents.** Rely on your attorney, not this overview, for complete, current guidance on offering, issuing, transferring, or cancelling your Company's membership interests.

Members, or membership interest holders such as assignees, own a limited liability company ("LLC") just as shareholders own a corporation and partners own a partnership. Depending on how an LLC is structured, Units may function like corporate shares or like partnership interests. If management of an LLC has been reserved to its Members, and every Member has the power to fully participate in the control of the business, does so, and is not primarily dependent upon the efforts of others for a return on investment, the Units are less likely to be "securities" under the classic "investment contract" test of *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293 (1946), as made stricter by *Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1980) and other cases. Units in this type of LLC would be similar to general partners' interests, which are generally not classified as securities. Consult your legal and tax advisors closely and frequently before relying on this concept. Changes in the applicable law, or any change in the Company, such as admission of new Members, creation of classes of membership interests with no voting rights, or sale or assignment of Units to persons who are never admitted as Members, could result in Units becoming securities that were not considered to be such at the time of the initial consultation with the attorney.

**Many LLC membership interests will be considered to be securities and will be subject to federal and state securities regulations.** Just as with corporate shares, the right to sell or transfer LLC Units is limited by securities laws. Additional mandatory limits on the Company's right to issue Units, and the number of Units that may be issued throughout the Company's history, may be imposed by its Certificate of Formation, Company Agreement, Members' agreements, or by law. The forms

following this section must be used when admitting each Member, including when admitting a Member's assignee as a new Member.

The Company Agreement provides that, if a proposed transaction would result in more than forty-nine percent (49%) of the Units in a partnership-taxed LLC being sold or exchanged in a given year, then ALL the Members must approve the transaction in advance. This helps safeguard against the unintentional "termination" of a partnership-taxed LLC for federal tax purposes. Such a termination can occur if there are sales or exchanges of more than fifty percent (50%) of the interest in "capital and profits" in the LLC within a twelve (12) month period. Internal Revenue Code § 708. (A disposition by gift, bequest or inheritance, or the liquidation of a membership interest is not considered a sale or exchange. 26 C.F.R. 1.708-1(b)(2).) This "termination" could have significant adverse tax consequences for Members, which need to be considered in advance.

**The price paid for Units must be specifically authorized by the Members** or whomever the governing documents designate to set the contribution, if any, that shall be made in exchange for Units. Before issuing Units, review the Certificate of Formation, Company Agreement, Members' agreements, and all resolutions of the Members authorizing issuance of Units to determine the correct price or other contribution to be made for Units. Any price above zero may be set by the Members or the Managers, whomever the governing documents authorize.

**Always obtain full payment in advance before issuing Units, or obtain a signed written agreement specifying the precise future contribution to be made and the date it is due** if the governing authority has authorized issuance of Units in exchange for agreements to contribute cash, property, or services in the future. Texas law specifically requires that promises to make a future contribution be in writing and signed in advance. Severe problems, such as financial loss to the Company and dilution of the value of Units held by other Members, can occur if payment is not received. Family members are no exception. Family-owned LLCs must strictly follow the law requiring full payment or a signed writing in advance.

**If the Company is a professional LLC ("PLLC"), Units may only be owned by individuals licensed in Texas to perform the specific professional service for which the Company is organized**, or by another professional legal entity, such as a professional corporation. While PLLCs have been exempted from state securities regulation under Section 301.011 of the Texas Business Organizations Code, they are fully subject to federal securities laws and regulations just like any other company.

**Your attorney may develop membership interest issuance procedures, forms, and record-keeping systems beyond the minimal steps described below.** Check with your attorney before using the steps outlined here. Follow the procedures set out by your attorney in every detail, or arrange for the law office to handle issuance of membership interests.

## Phase 1: Ensure that Transfer or Issuance is Authorized

### Confirm Compliance with Company Agreement Article 4.20, Mandatory Prerequisites Before Sale, Issuance, or Transfer of Membership Interests

**Stop Transfer Instructions**: No Units of Membership Interest shall be offered, sold, issued, or transferred until the Secretary has reviewed the Company records and determined that:

1. There is on file in the Company records a written attorney's opinion, satisfactory to the Company, which states that currently effective registration statements exist under the Securities Act of 1933 and all applicable state acts; or

2. There is on file in the Company records a written attorney's opinion, satisfactory to the Company, which states that neither federal nor state securities registration is required because the attorney has determined that the Units are not currently securities and will not become securities upon completion of the type of issuance or transfer proposed; or

3. This transaction differs in no detail from the proposed transaction described in the attached written attorney's opinion, satisfactory to the Company, which states that the attorney has reviewed the facts of this proposed transaction, and under the facts as disclosed to him, there is no fraud under Rule 10b-5, and neither federal nor state securities registration is required because, even if the Units are securities, or become securities upon completion of this proposed transaction, the Units or transaction fall within an exemption from registration; or

4. There is on file in the Company records a unanimous resolution of the Members who, having inquired into the issue and sought such legal counsel as they deemed sufficient, authorized the proposed issuance or transfer and determined that neither federal nor state securities registration is required to complete this transaction because the transaction will fall under a securities exemption or the Units will not be considered securities upon completion of the transaction.

### Confirm That All Conditions of Issue or Transfer Are Met

5. Review the Company records for a resolution of the Members or instructions from the Company's attorney containing procedures for the issue and transfer of Units and follow such procedures listed there, if any, to the extent they differ from these.

6. Be sure the prospective Member and the Members have completed the Consent to Admission of New Member form and either the Offer to

Purchase Units of Membership Interest and Become a New Member form or the Offer of Assignee to Become a Member form, and that these are filed in the Company records. If the prospective Member has initialed the form next to the choice, "I am acquiring these Units for other persons," **you are not authorized to make the transfer** unless there is on file in the Company records a written attorney's opinion, satisfactory to the Company, which states that currently effective registration statements exist under the Securities Act of 1933 and all applicable state acts.

7.  Review the limits in the governing documents that specify who may own Units. Do not issue or transfer Units if the purchaser fails to fulfill every requirement.

8.  Determine the number of Units to be issued or transferred and to whom.

9.  FOR ORIGINAL ISSUANCE ONLY - Review the Company records for limits, if any, on the number of Members who may be admitted, or the number of Units that may be issued by the Company. If limits exist, do not issue Units if one of the limits would be exceeded by the issuance.

10. FOR ORIGINAL ISSUANCE ONLY - Obtain the full advance payment, if any, for the Units, or a signed written agreement promising to pay, and give the purchaser a receipt. When Units are purchased with property, record the agreed or fair market value and the basis of the property in the hands of the Member at the time of transfer. This information may be needed for audit purposes and may be useful to the Member if Section 1244 tax advantages are later claimed. When payment is made with services rendered, record the agreed or fair market value of the services as determined by the Members. A column is provided in the Membership Interests Transfer Ledger to show agreed or fair market value and basis.

## Phase 2: Follow Minimum Procedures for Interest Transfer or Issuance

For an LLC exempt from registration of its membership interests, follow the basic steps in issuing or transferring Units outlined below. (An LLC that does register its membership interests will follow different issuance procedures specified by its attorney.) (For original issuance of new interests skip to Step 9.)

### Materials Needed:

— Membership Register
— Booklet containing membership certificates and transfer sheets
— Membership Interest Transfer Ledger

— Company records
— The Company's governing documents
— Standard receipt book or form
— Company embossing seal

**Secure Endorsement, Surrender, and Cancellation of Existing Certificates**

If the transfer involves a resale of Units that have already been issued, the original certificate must first be properly endorsed and surrendered to the Company. (For newly issued Units, begin with Step 9.)

1. Check the Company records to confirm that the person intending to sell the Units is the sole owner listed in the Company records and that the certificate being transferred is valid.

2. In the presence of a disinterested witness, have the seller legibly fill in and sign the back of the certificate (see below). The seller's name on front and signature on back must be spelled identically. All interest holders (e.g., if pledged, joint, trust, or community property, more than one person is an interest holder) should sign in the presence of the witness, who signs last.

*Example: Transfer of membership interests, back of certificate*

For value received, I/we hereby sell, assign, and transfer unto

**Bob Buyer**----------------------------------------------------------------

**Five Thousand Units of Membership Interest, being all**------ of the Units of Membership Interest, represented by this certificate, and irrevocably appoint and constitute **Sam Secretary**--------------------------------------- Attorney to transfer said interests on the books of the within-named Company with full power of substitution in the premises.

Dated _____ **November Fifth** _____ , 20 **16**

**Molly Member**
_____     _____
*Transferor*                                  *Transferor*

NOTICE: REGISTERED HOLDER'S SIGNATURE MUST CORRESPOND EXACTLY WITH THE NAME WRITTEN UPON THE FACE OF THE CERTIFICATE, IN EVERY PARTICULAR, WITH NO ALTERATION OR CHANGE. ALL INTEREST HOLDERS SHOULD SIGN (E.G., IF PLEDGED, JOINT, TRUST, OR COMMUNITY PROPERTY)

**Wanda Witness**
*Signed in the presence of*

The first blank line is for the name of the buyer. The second blank line is for the number of Units transferred. For example, if all of the Units are transferred: "…transfer unto Bob Buyer 5,000 Units of Membership Interest, being all ----- of the Units…." Or, if only some of the Units represented by the certificate are transferred: "…transfer unto Bob Buyer 1,000 out of 5,000---- of the Units…."

3. Have the witness sign where indicated. The person handling the transaction, the "Attorney to transfer said Units," can be the buyer, an attorney at law, or a responsible Officer.

4. With indelible ink, write "CANCELLED" across the face of the returned certificate and mark a double strike-through over the signature(s).

5. In the membership interest certificates booklet, record the surrender on the bottom third of the transfer sheet of the same number.

6. In the membership interest certificates booklet, glue the cancelled certificate to the transfer sheet having the same number.

7. Record the cancellation in the Membership Interests Transfer Ledger and the Membership Register. Subtract the Units being transferred from those owned by the seller in both the Ledger and the Register.

8. Continue with steps 9-19, to issue a new membership interest certificate to the buyer (and to the seller if less than all the Units were transferred) and to complete the transfer.

**Issue New Membership Interest Certificates**

9. Remove the next available certificate from the membership interest certificates booklet (do not use the certificate marked "SPECIMEN"). On the certificate, type or write the number of Units to be purchased (in two places), the buyer's name, the class or group of membership interest, if any, and the date of transfer.

*Example: Filling out a membership interest certificate, front of certificate*



10. The blank space below the line containing the number of Units represented by the certificate is provided to type extra notations such as "Class A Non-voting" or "Preferred" to describe the Units. You may leave this space blank if there is only one class or group of membership interests in the Company.

11. Have the certificate signed by the Officer(s) indicated in the Company's governing documents, usually the Secretary, or the President and Secretary. If these Officers cannot be present to sign at issuance, obtain their signatures on the certificate in advance.

12. At bottom center, emboss the certificate with the Company seal.

13. FOR ORIGINAL ISSUANCE ONLY - In the membership interest certificates booklet, on the transfer sheet of the same number, make a check in the first box, "This is an original issue …." Record the transaction information on the middle third of the transfer sheet.

14. FOR TRANSFERS ONLY - In the membership certificates booklet, on the transfer sheet of the same number, check the second box next to "Transferor's name is…." Record the transaction information on the sheet.

15. Have the new interest holder sign the transfer sheet.

16. Record the transaction in the Membership Interests Transfer Ledger. Enter the transaction on a line reasonably close to the initial letter of the interest holder's last name. (Later entries affecting that person go on subsequent lines if possible. Such grouping simplifies tallies for voting and dividends. More than one ledger may eventually be required.)

17. Record the transaction on the Membership Register.

18. Give the certificate to the new interest holder.

19. FOR TRANSFERS ONLY - When a seller transfers only some of the Units represented by a certificate, issue the seller a new certificate for the Units he or she is retaining.

## COMPANY AGREEMENT GOVERNING SPECIAL SITUATIONS

*Issuing membership interests to joint owners.* In Texas, membership interests or other property may be owned by sole ownership, joint tenancy, community property, community property with right of survivorship, or tenancy in common. Pursuant to Company Agreement Articles 4.10, Community Property Provisions, and 4.11, All Other Forms of Joint Ownership of Membership Interests, do not issue or transfer membership interests to joint owners unless authorized by the Members in writing.

*Issuing membership interests of multiple classes.* As with all other issuances, the Members must approve issuance of multiple classes or groups of membership interests, pursuant to Company Agreement Articles 4.22, Restrictions on Sale and Transfer of Membership Interests, and 4.15, Classes of Membership Interests.

*Restrictions on membership interest transfer.* Restrictions on transfer must be reasonable and noted conspicuously on the certificates evidencing the Units affected. See Company Agreement Article 4.17, Additional Notices Required on Certificates.

*Lost certificates.* A lost membership interest certificate may be a serious matter and must be immediately reported to the Members. No certificate shall be replaced without following the provisions of Company Agreement Article 4.18, Issuance and Replacement of Certificates. Consult legal counsel on how best to minimize the risk to the Company if this situation arises.

## OFFER TO PURCHASE
## UNITS OF MEMBERSHIP INTEREST
## AND BECOME A NEW MEMBER
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

I, _____, offer to purchase the below-described Units of Membership Interest ("Units") in the above-named limited liability company (the "Company").

By my signature hereto, I hereby acknowledge and agree to the following:

1. I have read the Certificate of Formation and the Company Agreement of the Company, and I understand the obligations of membership, including, but not limited to, obligations for future contributions, whether contained in the Certificate of Formation or Company Agreement, an appendix to the Certificate or Company Agreement, Minutes or Resolutions of the Members, or Members' agreements, and I hereby agree to be bound by those terms and to fulfill the obligations of membership.

2. I have been notified, pursuant to Texas Administrative Code 109.13(j)(5), that I must bear the economic risk of the investment for an indefinite period of time because these Units have not been registered under applicable securities laws, and therefore, cannot be sold unless and until they are subsequently registered under applicable securities laws, an exemption from registration is available, or the Company determines that these Units are not securities.

3. I have been notified, pursuant to Texas Administrative Code 109.13(j)(5), that these Units are subject to limitations on transferability and sale, as conspicuously set forth and referred to on the membership interest certificate, and that the Company's transfer officers have been issued stop transfer instructions to enforce these restrictions.

4. I have examined all restrictions on offer, sale, resale, and transfer of membership interests as set forth on the front and back of the Company's membership interest certificate and referenced documents, and agree and stipulate that they are reasonable.

5. I agree that I will not attempt to resell my Units without registration under applicable securities laws or exemption therefrom, or an attorney's opinion, satisfactory to the Company, that registration is not required.

6. I will not become a Member of the Company unless ALL of the Members give their written consent to my membership. I further understand that this agreement is only an offer to the Company, and not an enforceable contract until the required written consents have been executed. Further, this offer

will expire if the required number of Members fails to give such consent within _____ days of this offer.

7. In consideration for this agreement, and of my full payment of any contributions listed below, I will be eligible to receive all the rights and privileges of membership when accepted by the required majority of the Members, including, but not limited to, the right to vote and participate in the management of the Company that accrues to a Member of the Company (except as limited by law, the Certificate of Formation, or the Company Agreement).

8. Are you acquiring the Units on your own account or on behalf of other persons? Please answer by initialing only one of the following:

_____ I am acquiring these Units for myself.

_____ I am acquiring these Units for other persons.

| Name | Units of Membership Interest | Of Class (if any) | Initial Contribution | Date Made |
|------|------|------|------|------|
| Mailing Address | | Admission Date | Agreed Future Contributions | Date Due |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | | |

Signed the _____ day of _____, _____.

_____

Membership Applicant

## OFFER OF ASSIGNEE TO BECOME A MEMBER
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

I, _____, am the assignee of the below-described Units of Membership Interest ("Units") in the above-named limited liability company (the "Company").

By my signature hereto, I hereby acknowledge and agree to the following:

1. I have read the Certificate of Formation and the Company Agreement of the Company, and I understand the obligations of membership, including, but not limited to, obligations for future contributions, whether contained in the Certificate of Formation or Company Agreement, an appendix to the Certificate or Company Agreement, Minutes or Resolutions of the Members, or Members' agreements, and I hereby agree to be bound by those terms and to fulfill the obligations of membership.

2. I have been notified, pursuant to Texas Administrative Code 109.13(j)(5), that I must bear the economic risk of the investment for an indefinite period of time because these Units have not been registered under applicable securities laws, and therefore, cannot be sold unless and until they are subsequently registered under applicable securities laws, an exemption from registration is available, or the Company determines that these Units are not securities.

3. I have been notified, pursuant to Texas Administrative Code 109.13(j)(5), that these Units are subject to limitations on transferability and sale, as conspicuously set forth and referred to on the membership interest certificate, and that the Company's transfer officers have been issued stop transfer instructions to enforce these restrictions.

4. I have examined all restrictions on offer, sale, resale, and transfer of membership interests as set forth on the front and back of the Company's membership interest certificate and referenced documents, and agree and stipulate that they are reasonable.

5. I will not become a Member of the Company unless ALL of the Members give their written consent to my membership. I further understand that this agreement is only an offer to the Company, and not an enforceable contract until the required written consents have been executed. Further, this offer will expire if the required number of Members fails to give such consent within _____ days of this offer.

6. In consideration for this agreement, and of my full payment of any contributions listed below, I will be eligible to receive all the rights and privileges of membership when accepted by the required majority of the

Members, including, but not limited to, the right to vote and participate in the management of the Company that accrues to a Member of the Company (except as limited by law, the Certificate of Formation, or the Company Agreement).

7. Are you acquiring the Units on your own account or on behalf of other persons? Please answer by initialing only one of the following:

_____ I am acquiring these Units for myself.

_____ I am acquiring these Units for other persons.

_____          _____
Name of Assignor                                                         Date of Assignment

| Name | Units of Membership Interest & Class (if any) | | Initial Contribution | Date Made |
|---|---|---|---|---|
| Mailing Address | | Admission Date | Future Contributions | Date Due |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | | |

Signed the _____ day of _____, _____.


                                        _____
                                        Assignee/Membership Applicant

## CONSENT TO ADMISSION OF NEW MEMBER
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

We, the undersigned, being ALL of the Members of the above-named limited liability company (the ''Company''), have considered the possibility that this issuance may be subject to securities regulation, and have taken the following course of action as required by the Company Agreement:

☐ There is attached with this resolution a written attorney's opinion, satisfactory to the Company, which states that currently effective registration statements exist under the Securities Act of 1933 and all applicable state acts; or

☐ There is attached with this resolution a written attorney's opinion, satisfactory to the Company, which states that neither federal nor state securities registration is required because the attorney has determined that the Units of Membership Interest ("Units") are not currently securities and will not become securities upon completion of the type of issuance or transfer proposed; or

☐ This transaction differs in no detail from the proposed transaction described in the attached written attorney's opinion, satisfactory to the Company, which states that the attorney reviewed the facts of the proposed transaction, and under the facts as disclosed to him, there is no fraud under Rule 10b-5, and neither federal nor state securities registration is required because, even if the Units are securities, or become securities upon completion of the proposed transaction, the Units or transaction fall within an exemption from registration; or

☐ There is attached with this resolution a unanimous resolution of the Members who, having inquired into the issue and sought such legal counsel as they deem sufficient, authorize the proposed issuance or transfer and determine that neither federal nor state securities registration is required to complete this transaction because the transaction will fall under a securities exemption or the Units will not be considered securities upon completion of the transaction.

We further resolve to admit the person listed below as a new Member of the Company. Such status shall be effective on the latter of the date of the signature of the last required Member to sign this consent or the date that the new Member makes any initial capital contribution described below. If this transfer results in over forty-nine percent (49%) of the Units in the Company being transferred in one year, we have considered any potential implication of this transfer under Internal Revenue Code § 708, including the termination of the partnership for federal tax purposes.

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| Mailing Address | Admission Date | Future Contributions | Date Due |

Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest)

Signed the _____ day of _____, _____.

| | |
|---|---|
| Member                    Date | Member                    Date |
| Member                    Date | Member                    Date |
| Member                    Date | Member                    Date |

*Company Seal*

## RESOLUTION AUTHORIZING ISSUANCE OF
## UNITS OF MEMBERSHIP INTEREST
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

We, the undersigned, being all of the Members of the above-named limited liability company (the "Company"), have considered the possibility that this issuance may be subject to securities regulation, and have taken the following course of action as required by the Company Agreement.

We have inquired into the issue and sought such legal counsel as we deem sufficient, and hereby authorize the issuance of the Units of Membership Interest ("Units") described below and determine that neither federal nor state securities registration is required to complete this transaction because the transaction will fall under a securities exemption or the Units will not be considered securities upon completion of the transaction.

RESOLVED, that the Company issue _____ Units to _____ for the following consideration, if any:


Adopted on the _____ day of _____, _____.


_____          _____
Member                                       Member


_____          _____
Member                                       Member


_____          _____
Member                                       Member


*Company Seal*

## MEMBERSHIP REGISTER
## OF CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| Eric Dee Smith | | Cash | |
| Mailing Address | Admission Date | Future Contributions | Date Due |
| 1935 Flour Bluff Drive<br>Corpus Christi, Texas 78418 | | | |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | |

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| Leonard Harris | | Cash | |
| Mailing Address | Admission Date | Future Contributions | Date Due |
| 1510 Madrid<br>Corpus Christi, Texas 78416 | | | |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | |

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| | | | |
| Mailing Address | Admission Date | Future Contributions | Date Due |
| | | | |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | |

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| | | | |
| Mailing Address | Admission Date | Future Contributions | Date Due |
| | | | |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | |

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| | | | |
| Mailing Address | Admission Date | Future Contributions | Date Due |
| | | | |
| Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest) | | | |

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| Mailing Address | | Admission Date | Future Contributions | Date Due |

Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest)

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| Mailing Address | | Admission Date | Future Contributions | Date Due |

Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest)

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| Mailing Address | | Admission Date | Future Contributions | Date Due |

Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest)

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| Mailing Address | | Admission Date | Future Contributions | Date Due |

Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest)

| Name | Units of Membership Interest & Class (if any) | Initial Contribution | Date Made |
|---|---|---|---|
| Mailing Address | | Admission Date | Future Contributions | Date Due |

Special Allocations (share of losses, profits, votes, assets on winding up, etc., if not proportional to units of membership interest)

# MEMBERSHIP INTEREST TRANSFER LEDGER

© 2003, 2005 LAWYER'S AID SERVICE

| NO. OF UNITS ISSUED ON THIS DATE | CERT. NO. | AMT PAID (OR FAIR MARKET/AGREED VALUE OF NON-CASH PMT) | UNITS OF MEMBERSHIP INTEREST TRANSFERRED OR SURRENDERED | | | | | | NUMBER OF UNITS OWNED (BALANCE) |
|---|---|---|---|---|---|---|---|---|---|
| | | | DATE OF TRANSFER | TO WHOM TRANSFERRED | NO. OF UNITS TRANSFERRED/ SURRENDERED | CERT. NO. | PAYMENT REC'D BY MEMBER | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

*MEMBERSHIP INTEREST CERTIFICATES*

# CORPUS CHRISTI RAGE
# ARENA FOOTBALL L.L.C.



CERTIFICATE
NUMBER

—1—

NUMBER
OF UNITS

75

## CORPUS CHRISTI RAGE
## ARENA FOOTBALL L.L.C.

See reverse for transfer and membership restrictions, and for potential duties and liabilities of members.

**This is to Certify** that _ERIC DEE Smith_ is
the registered holder of _Seventy-five (75)_ Units of

Membership Interest, transferable only on the books of the Company by the holder hereof, in person or by Attorney, upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Company has caused this Certificate to be signed by its duly authorized representative(s) this _3Rd_ day of _August_ , 20 _16_ .

_Eric Dee S___

MEMBER

MEMBER

© 1994, 2003, 2005 LAWYER'S AID SERVICE, INC.



CERTIFICATE
NUMBER

—2—

NUMBER
OF UNITS

25

# CORPUS CHRISTI RAGE
# ARENA FOOTBALL L.L.C.

See reverse for transfer and membership restrictions, and for potential duties and liabilities of members.

This is to Certify that **LEONARD HARRIS** is

the registered holder of **TWENTY - FIVE (25)** Units of

Membership Interest, transferable only on the books of the Company by the holder hereof, in person or by Attorney, upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Company has caused this Certificate to be signed by its duly authorized representative(s) this **3rd** day of **August**, 20**16**.

MEMBER

MEMBER

© 1994, 2003, 2005 LAWYER'S AID SERVICE, INC.

# TRANSFER SHEET FOR CERTIFICATE 1

☐ This is an original issue by the Company; **OR**

☐ Transferor's name is _____.

Transferor was issued _____

units of membership interest by previous Certificate Number _____.

Transferor has surrendered said previous Certificate on the _____

day of _____, 20_____.

**THEREFORE CERTIFICATE** 1, for _____

units of membership interest, dated _____, 20_____,

**IS ISSUED TO:** _____,

whose address(es) and phone number(s) are _____

_____

_____

_____

_____

_____.

**I RECEIVED** the above-described Certificate on the _____

day of _____, 20_____.

_____
*Membership Interest Holder's Signature*

**DATE CERTIFICATE 1 SURRENDERED:**

_____, 20_____.

**UNITS OF MEMBERSHIP INTEREST TRANSFERRED UPON
SURRENDER OF CERTIFICATE 1**
(Total may not exceed total on Certificate 1.)

| Transferee's certificate no. | Units transferred | Transferee's certificate no. | Units transferred |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**ATTACH CERTIFICATE NUMBER 1 HERE UPON SURRENDER**

# TRANSFER SHEET FOR CERTIFICATE 2

☐ This is an original issue by the Company; **OR**

☐ Transferor's name is _____.

Transferor was issued _____

units of membership interest by previous Certificate Number _____.

Transferor has surrendered said previous Certificate on the _____

day of _____, 20_____.
_____

**THEREFORE CERTIFICATE 2**, for _____

units of membership interest, dated _____, 20_____,

**IS ISSUED TO:** _____,

whose address(es) and phone number(s) are _____

_____

_____

_____

_____

_____.

**I RECEIVED** the above-described Certificate on the _____

day of _____, 20_____.


_____
*Membership Interest Holder's Signature*
_____

**DATE CERTIFICATE 2 SURRENDERED:**

_____, 20_____.

**UNITS OF MEMBERSHIP INTEREST TRANSFERRED UPON
SURRENDER OF CERTIFICATE 2**
(Total may not exceed total on Certificate 2.)

| Transferee's certificate no. | Units transferred | Transferee's certificate no. | Units transferred |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**ATTACH CERTIFICATE NUMBER 2 HERE UPON SURRENDER**

## PROMISSORY NOTE – LINE OF CREDIT

STATE OF GEORGIA
COUNTY OF FULTON

Maximum Principal: $150,000.00                                    April 13, 2017

     **FOR VALUE RECEIVED**, the undersigned, **CORPUS CHRISTI RAGE ARENA FOOTBALL L.L.C.**, a Texas limited liability company ("*Maker*"), intending to be legally bound, does promise to pay to the order of **NATIONAL ARENA LEAGUE, INC.**, a Delaware nonprofit corporation ("*Lender*"), at such place or address as Lender may designate writing, the principal sum advanced hereunder, together with interest thereon, such principal and interest to be payable as provided below.

### I.    ADVANCES

     Maker may draw against the maximum principal for this Note at any time and from time to time upon written notice to Lender, and Lender agrees to immediately advance such requested draws, subject to Lender's final approval and consent, provided that the maximum amount of such advances, including advances which have been repaid, shall not exceed One Hundred Fifty Thousand Dollars ($150,000.00). Maker's right to obtain advances under this Note shall expire on December 31, 2017.

### II.    CALCULATION OF INTEREST RATE

     During the term of this Note, the outstanding principal balance of any advance made hereunder shall bear interest at the rate of ten percent (10%) per annum, as of the date of such advance, compounded monthly ("*Interest Rate*"), on the basis of the actual days elapsed on the assumption that each month contains thirty (30) days and each year contains three hundred sixty (360) days.

### III.    REPAYMENT OF PRINCIPAL AND INTEREST

     1.     Payments of interest only, computed at the Interest Rate on the outstanding principal amount of each advancement made hereunder, shall be due and payable commencing on the first day of the calendar month immediately following the date of such advancement, and on the first (1st) day of each month thereafter through and including October 1, 2017. Interest shall be payable in arrears.

     2.     On first anniversary of the date of this Note, the "*Maturity Date*", the entire outstanding Debt, if not sooner paid, shall be due and payable in full. The term "*Debt*" shall mean the indebtedness evidenced by this Note, including the principal, all interest, and all extensions, renewals, modifications, or substitutions thereof, and all fees, costs and expenses incurred by Lender in connection with this loan that are reimbursable by Maker; and all other sums due or required to be paid to Lender hereunder. This entire Debt shall be due and payable upon the earliest to occur of (1) the Maturity Date, or (2) any earlier date on which this Note shall be required to be paid in full, whether by acceleration or otherwise.

     3.     All payments shall be applied first to late fees and any other fees incurred by the Lender that are reimbursable by Maker, and then interest then due and payable; any balance shall be applied to the reduction of principal. The principal and interest shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment.

# EXHIBIT B

## IV.   PREPAYMENT

Maker may prepay all or any part of the principal balance evidenced by this Note at any time and from time to time without prepayment penalty or premium.

## V.   LATE CHARGES AND DEFAULT INTEREST

Maker shall pay a late charge equal to five percent (5%) of any payment (including, without limitation, the balloon payment due on the Maturity Date) not received by Lender within ten (10) days after the due date thereof. Maker agrees that such late charge is not a charge for the use of the money, but is imposed to compensate Lender for some administrative services, costs and losses associated with any default (including a payment default upon maturity) under the Note, and such late charge is fully earned and nonrefundable when accrued. Collection or acceptance by Lender of such late charge shall not constitute a waiver of any remedies of Lender provided herein or otherwise at law. In the event of any uncured monetary default under a certain letter agreement entered into between Lender and Maker of even date herewith (the "Letter Agreement"), in addition to the late charge, the Interest Rate for interest due on the outstanding total indebtedness shall increase by the lesser of the following: (i) five percentage points; or (ii) the maximum amount allowed by law.

## VI.   EVENTS OF DEFAULT

1.     The principal sum evidenced by this Note, together with accrued interest, shall become immediately due and payable at the option of Lender upon the occurrence of any of the following events, each of which shall constitute an "*Event of Default*" hereunder.

(i)     The failure of Maker to pay, as and when due, any installment of principal or interest hereunder, on or before the due date thereof.

(ii)    Maker files a voluntary petition in bankruptcy or Maker is adjudicated as a bankrupt or insolvent, or Maker files a petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief for itself under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency or other relief for debtors, or Maker seeks or consents to or acquiesces in the appointment of any trustee, receiver or liquidator of Maker or makes a general assignment for the benefit of creditors or admits in writing its inability to pay its debts generally as they become due.

(iii)   The filing against Maker of a petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other statute, law or regulation relating to bankruptcy, insolvency, or other relief for debtors, or the appointment of any trustee, receiver or liquidator of Maker or of a substantial part of Maker's property or of any or all of the rents, revenues, issues, earnings, profits or income thereof without the consent or acquiescence of Maker.

(iv)    Lender believes the prospect of payment or performance of the indebtedness is impaired or Lender determines that it is insecure for any other reason.

(v)     The death, incompetency, or insolvency of Maker.

(vi)    Any failure of Maker to adhere to the terms of the Letter Agreement.

2

2.      After maturity, whether by acceleration or otherwise, Maker agrees to pay to Lender interest on the aggregate indebtedness represented hereby, including accrued interest, at a rate equal to the then-current Interest Rate plus five percentage points until such aggregate indebtedness is paid in full.

## VII.    WAIVER

1.      Maker waives demand, presentment, protest, notice of dishonor, notice of nonpayment, suit against any party, diligence in collection, and all other notices or requirements necessary to enforce this Note and any further receipt by or acknowledgement of any collateral now or hereafter deposited as security for the obligations of Maker hereunder.

2.      Maker hereby severally waives, both for himself and his family, any and all homestead and exemption rights which he or his family may have under or by virtue of the Constitution or laws of the United States of America or of any state as against this Note, any renewal hereof, or any indebtedness represented hereby.   Maker hereby transfers, conveys and assigns to Lender a sufficient amount of property or money set apart as exempt to pay the indebtedness evidenced hereby or any renewal thereof and does hereby appoint Lender as the attorney-in-fact for him to claim any and all homestead exemptions allowed by law.

## VIII.    MISCELLANEOUS

1.      In no event shall the amount of interest due or payable hereunder exceed the maximum rate of interest allowed by applicable law.  In the event such payment is inadvertently paid by Maker or inadvertently received by Lender, then such excess sum shall be credited as a payment of principal unless Maker elects to have such excess sums refunded to it forthwith.  It is the express intent hereof that Maker not pay and Lender not receive, directly or indirectly, interest in excess of that which may be legally paid by Maker under applicable law.

2.      Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies and no waiver of any kind shall be valid unless in writing and signed by Lender. All rights and remedies of Lender under the terms of this Note and applicable statutes or rules of law shall be cumulative and may be exercised successively or concurrently.  Maker agrees that there are no defenses, equities or setoffs with respect to its obligations set forth herein.

3.      As used herein, the terms "*Maker*" and "*Lender*" shall be deemed to include their respective heirs, successors, successors-in-title, legal representatives and assigns whether by voluntary action of the parties or by operation of law.

4.      Wherever and whenever in this Promissory Note it shall be required or permitted that notice or demand be given or served by any party, such notice or demand shall be given or served in writing and deposited in the United States mail, registered or certified return receipt requested, and addressed as follows:

To Maker:       Corpus Christi Rage Arena Football L.L.C.
                1935 Flour Bluff Drive
                Corpus Christi, Texas 78418

3

To Lender:          National Arena League, Inc.
                    5565 Glenridge Connector, NE, Suite 850
                    Atlanta, Georgia 30342

Such notice shall be deemed delivered on the date personally delivered, or if mailed, on the third (3rd) business day after the same was deposited in the United States mail, certified and postage prepaid, return receipt requested as aforesaid.  Either party may change the address at which he or it is to receive notice or other communication hereunder by giving notice of such change to the other party in accordance herewith.

5.      This Note is being held by Lender in the State of Georgia and shall be governed by and construed in accordance with the laws of the State of Georgia.  Any provisions of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

6.      Maker agrees that no failure to accelerate the debt evidenced by this Note by reason of an Event of Default hereunder, acceptance of a past due installment or an indulgence granted from time to time shall be or be construed to be (i) a reinstatement by Lender of the indebtedness evidenced by this Note or (ii) a waiver by Lender of its rights of acceleration or of its right to thereafter insist on strict compliance with the terms of this Note.  No extension of the time for the payment of any installment due under this Note made by agreement with any person now or hereafter liable for the payment under this Note shall operate to release, discharge, modify, change or affect the original liability of Maker under this Note, either in whole or in part.  This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

7.      TIME IS OF THE ESSENCE WITH RESPECT TO THIS NOTE.  Maker will also pay to Lender, in addition to the amount due, all costs of collecting this Note, including without limitation, court costs and reasonable attorneys' fees, if collection is required by legal action or through an attorney-at-law, even if such attorney-at-law is employed by the Lender.

**IN WITNESS WHEREOF**, the undersigned Maker has signed this instrument effective as of the date and year first written above.

**MAKER:**

Corpus Christi Rage Arena Football L.L.C.

By: _Eric Dee Smith_____
Name:  Eric Dee Smith
Title:   Member

4

**Guarantee**

Eric Dee Smith, an individual resident of the State of Texas,  ("**Smith**") hereby guarantees payment of the above Maker.  Smith agrees that the Lender may proceed against Smith directly and independently of the Maker, and that the cessation of the liability of the Maker for any reason other than full payment, or any extension, renewal, forbearance, change of rate of interest, or acceptance, release, or substitution of security, or any impairment or suspension of the Lender's remedies or rights against the Maker, shall not in any way affect the liability of Smith, who shall be jointly and severally liable.

Dated: April 13, 2017
SMITH

_Eric Dee Sm_
ERIC DEE SMITH

STATE OF TEXAS        )
                      ) ss.:
COUNTY OF NUECES  )

On the _13 Th_       day of April, 2017, before me personally came Eric Dee Smith to me known and known to be the individual described in and who executed the foregoing instrument, and he did duly acknowledge to me that he executed the same

State of Texas
County of _Nueces_
This instrument was acknowledged before me on _13th April 2017_
by _TX Commercial Drivers License_
_Karissa Oneill_
Notary Public's Signature

KARISSA L. ONEILL
Notary Public
STATE OF TEXAS
My Comm. Exp. 02/06/2021
ID# 130994744

# MENDENFREIMAN LLP

YOUR FUTURE IS HERE®

two ravinia drive, suite 1200, atlanta, ga 30346
phone: (770) 379-1450      fax: (770) 379-1455
www.mendenfreiman.com

Nathan T. Johns
(770) 559-5592
njohns@mendenfreiman.com

November 21, 2017

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

CORPUS CHRISTI RAGE ARENA FOOTBALL, L.L.C.
Attn: Mr. Eric D. Smith
1935 Flour Bluff Drive
Corpus Christi, Texas 78418

*Re:    NOTICE OF DEFAULT:  Promissory Note- Line of Credit dated April 13, 2017 in the original principal amount of ONE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($150,000.00) (the "Note") made by CORPUS CHRISTI RAGE ARENA FOOTBALL, L.L.C., a Texas limited liability company ("Borrower"), to NATIONAL ARENA LEAGUE, INC. ("Lender"), the Note being secured by the guarantee of Eric Dee Smith ("Guarantor") and that Letter Agreement dated April 13, 2017 between Borrower and Lender (the "Letter Agreement"), each of the above described instruments being referred to herein as the "Loan Documents".*

*Dear Mr. Smith:*

This firm represents the Lender with respect to the above-referenced Loan Documents. Borrower has committed a monetary default under the Loan Documents as Borrower failed to meet its repayment obligations under the Note.  This letter shall serve as notice of monetary default under the Note.  Lender has advanced $176,795.97 in principal under the Note, less payments of $12,575.00.

Borrower has defaulted in payment of interest due under the Note as of November 21, 2017 in the amount of $9,412.51.  In accordance with the terms and conditions of the Loan Documents the entire amount of the present outstanding balance of both the principal and accrued interest on the indebtedness is due and payable in the amount of $173,633.48.  Interest continues to accrue on the outstanding principal at the default rate of 15% ($72.34 per day).

growth, protection and transfer of businesses and estates

# EXHIBIT C

# MENDENFREIMAN LLP

YOUR FUTURE IS HERE®

Mr. Eric Dee Smith
November 21, 2017
Page 2 of 3

All late charges incurred on the indebtedness evidenced by the Loan Documents, and all other charges provided for under the Loan Documents (all such monies due on said indebtedness hereinafter collectively referred to as the "Amounts Due") shall be considered, without further action or notice by Lender or its counsel, declared immediately due and payable.

Unless the Amounts Due are paid in full within ten (10) days from your receipt of this letter, the provision for attorneys' fees in the Loan Documents will be enforced, as provided by O.C.G.A. § 13-1-11, and you will be required to pay such stipulated attorneys' fees. The payment for attorneys' fees will be in addition to your obligation to pay the Amounts Due. If you pay the Amounts Due within the ten (10) day period set forth above, you will not be required to pay the attorneys' fees. In other words, you can avoid the additional obligations of attorneys' fees if the Amounts Due are fully paid within ten (10) days from the receipt of this letter.

Nothing contained in this letter or any delay on the part of Lender in exercising any of its rights and remedies under the Loan Documents or applicable law shall be considered to be a waiver or modification thereof, or an election of remedies by Lender.

Any money expended by Lender in accordance with the terms and conditions of the Loan Documents shall be added to the outstanding principal indebtedness secured by the Loan Documents, shall bear interest at the default rate specified in the Loan Documents, shall be deemed secured by the Loan Documents, and shall be subject to the aforementioned provisions contained in the Loan Documents governing the payment of attorneys' fees. No attorneys' fees shall be due for such additional money expended until after ten (10) days from your receipt of notice of such additional Amounts Due, and you will have an opportunity to avoid such additional attorneys' fees by the payment of the additional Amounts Due within ten (10) days from receipt of notice.

Notice is also hereby given to you pursuant to O.C.G.A. § 13-4-4, that Lender continues to rely on and hereby continues to require strict compliance with each and every term and condition of the Loan Documents and the other documents evidencing and securing the indebtedness and none of the terms or conditions contained in said Loan Documents shall be construed as having been modified by Borrowers' failure to make the payments required under the Loan Documents.

Please deliver to this office no later than **3:00 p.m., December 1, 2017,** a cashier's or certified check made payable to **"National Arena League, Inc."** in the amount of **$173,633.48**. This amount consists of $164,220.97 principal and $9,412.51 in interest. If payment is not forthcoming as demanded, Lender will, at its option, institute proceedings, if necessary, to obtain

growth, protection and transfer of businesses and estates

# MENDENFREIMAN LLP

YOUR FUTURE IS HERE®

Mr. Eric Dee Smith
November 21, 2017
Page 3 of 3

operational control of the team, plus all amounts owing, plus such other damages, costs, expenses and attorneys' fees pursuant to the Note and applicable law.

      All inquires concerning the Loan Documents and any amounts due thereunder should be directed to me at the firm of MENDENFREIMAN LLP (770-559-5592). This letter is being sent to you by certified mail. Refusal of delivery is deemed, under the law, to be equivalent to notice.

      This matter demands your immediate attention.

      Sincerely,

      MENDENFREIMAN LLP

      Nathan T. Johns

NTJ:bnc

Cc: Robert Storm – National Arena League, Inc.
     Max R. Lafer, Esq.

Enclosures

growth, protection and transfer of businesses and estates

[793171] Demand Letter - Corpus Christi Rage.docx